[Crim. No. 3864. First Dist., Div. Two. June 15, 1961.]

THE PEOPLE, Respondent, v. THOMAS E. McKOY, Appellant.

Lane P. Brennan, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and John L. Burton, Deputy Attorneys General, for Respondent.

KAUFMAN, P. J.—Defendant appeals from a judgment rendered on a jury verdict finding him guilty of selling narcotics in violation of section 11501 of the Health and Safety Code. The only question on appeal is whether the appellant was denied a fair trial because of the absence of the informer at the time of the preliminary hearing and the trial.

The record reveals the following facts: About 10:30 p.m. on December 14, 1959, by prearrangement, two police officers, Toomey and Higgins of the Narcotics Detail of the San Francisco Police Department, who were in their unmarked police car at the corner of Fulton and Steiner Streets in San Francisco, met the informer, one William Russell. Russell entered the back seat of the vehicle and after being searched by Toomey, was given $20 in city funds. Toomey left the car and walked to a building on the northwest corner of Fulton and Fillmore, while Russell remained in the car with Higgins. Toomey stationed himself in a corner room on the second floor of the building. From there, he could see north and south on Fillmore, east on Fulton to Webster Street and west on Fulton for about 50 feet.

Higgins then drove to Steiner Street just a little above Fulton, parked, and waited until he received contact from Toomey on the walkie-talkie radio. He then moved the car on Fulton Street between Steiner and Fillmore. Russell left the automobile and crossed to the north side of Fulton Street, followed on the south side of Fulton Street by Higgins. Higgins saw Russell meet the appellant and observed that Russell had put his left hand in his pocket, which according to the prearranged signals with the police officers, meant that he was in contact with a narcotics dealer. While they conversed, Higgins returned to the car, and communicated with Toomey,

and then returned to following Russell and the appellant. He followed about 30 to 40 yards behind them as they walked east on Fulton across the Fillmore Street intersection, down to Webster, and then back toward Fillmore on Grove Street. From across the street, Higgins saw Russell take his left hand out of his pocket and make physical contact with the appellant's hand. The appellant then left and entered the doorway of the rooming house at Number 659, and disappeared for a few minutes. Then, the appellant reappeared, walked toward Russell, and their hands met again. Thereafter, Russell walked north on Fillmore, down to Fulton, turned up Fulton and again entered the police automobile.

A short time after communicating by walkie-talkie with Officer Higgins, Toomey saw Russell and the appellant walking on the north side of Fulton at Fillmore. Russell had his left hand in his pocket. They crossed from the northwest corner [of Fulton and Fillmore] to the northeast corner, then to the southeast corner, and then proceeded east on the south side of Fulton Street until they reached the corner of Webster and turned south. Officer Higgins followed on the north side of Fulton Street.

Officer Toomey then returned to the car and received from Russell a red balloon, the contents of which were subsequently identified as heroin. Another search of Russell revealed the absence of the money previously given him. From the time Russell had left the police vehicle, until he returned to it, he did not come into contact with any person except the appellant. There were very few pedestrians on the streets although there was a fair amount of vehicular traffic on Fillmore Street. There was sufficient light to enable Toomey and Higgins to see the appellant and Russell clearly.

Almost four months later, on March 31, 1960, the appellant was arrested; in a search of his home, the police found a box of balloons like the one Russell had turned over to the police on December 14, 1959. The appellant was held to answer on April 19, 1960, and was given the name of the informant, William Russell, on that date. The indictment was filed on April 22, 1960.

The matter was tried on June 21, 1960. When the appellant at the trial offered to introduce evidence showing that Russell was in Mexico City on May 11, 1960, on the basis of *People* v. *Kiihoa*, 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673], the court rejected the offer as follows:

"THE COURT: Well, this is another question. This is an-

other question as to whether or not you can prove that the Police Department is conniving, as indicated in one of the cases there. That is another question.

"But the basic question is whether or not the informant can be located so that he may be brought into court to testify.

"Now, you say that your investigator, Mr. Nicco, has information as to the whereabouts of the informer. Now, that being true, it is incumbent upon you to bring the informer in court. As a matter of fact, the police officers who testified have testified they don't even know where the informer is.

"Now, if you wish to obtain this—bring this informer into court, I will give you the opportunity to do so.

"MR. NICCO: I am sure the Court would, Your Honor, but that is not the problem I have.

"THE COURT: Well, that is the problem before the Court, as to whether or not this informer has evidence to offer here that might be of value to the defendant's case. And if you think it is of value and you want a continuance, I will give you a continuance which will enable you to have time to bring the informer in, if you can.

"MR. NICCO: Well, we have been attempting to find him, the informer. We have been unsuccessful, except to find that he might have been in Mexico City in the early part of May. We exhausted our limited facilities of investigation available to us and just having the defendant remain in custody, hoping that we can find the informant, of course, I believe would be more of prejudice to the defendant.

"So, for that reason, we cannot ask for a continuance, Your Honor.

"THE COURT: Well, I am interested in protecting the rights of the defendant, but I don't think it is proper now to offer testimony regarding the possible whereabouts of the informant. It serves no real purpose here, because it is not even—if you should prove his whereabouts, it wouldn't support any contention that the Police Department connived to get him out of the jurisdiction or not to return to this jurisdiction.

"MR. NICCO: Now—but, then, of course, we could possibly get him into court, if we knew where he was. It is not solely for the purpose of whether or not the police connived with him, the second point would be: He is the only one in a position to testify as to what transpired on this particular day.

"MR. RHINE: I might say, Your Honor, they seem to have a lead as to where he is. He is in Mexico City, supposedly.

There is no request that they want a continuation to bring him in and, I might state, Your Honor, that we are ready to prove, if the defense is permitted to show this gentlemen's investigation, that the defendant, the day he was arrested, was informed of the name of the person. He was shown his picture and asked if he knew the person. 'This is the person to which you sold on the 14th day of December.' This is the person he was shown the picture and informed his name is such and such.

"Now, Your Honor, what more can the People do than inform you, on that day and on that date, the man was still in San Francisco.''

The sole argument on appeal is that this rejection was prejudicial error under the doctrine laid down in *People* v. *Kiihoa*, 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673]. In that case, the police also worked through an informer to implicate the defendant in a sale of narcotics. The claimed transaction occurred on April 23, 1958; defendant was arrested on July 16, 1958. The prosecution filed no charges but released the defendant after 51 hours. On September 29, 1958, the defendant was rearrested and brought to trial. The defendant testified that he did not know the alleged informant (Stough) and had never seen the deputy sheriff who participated in the alleged transaction. A police officer testified that the prosecution originally released the defendant so that the prosecution might avoid the possibility of a required disclosure of the informer's identity; that thereafter, the informer left the state; that then the prosecution rearrested the defendant as the informer ''. . . might then be identified without subjecting him to reprisals . . .'' (*Supra,* at p. 751.) Our Supreme Court, after pointing out that these admissions indicated that the state sought to circumvent, if not to stultify, the reason for the rule requiring the disclosure of the identity of the informant, said at page 752:

''The right of an accused to be confronted with witnesses is the right to have witnesses who testify do so in the presence of and subject to cross-examination by the defendant. The prosecution is not required to call any particular witness, nor to put on all the evidence relating to a charge so long as all material evidence bearing thereon is fairly presented in such a manner as to accord to the defendant a fair trial. (*People* v. *Tuthill*, 31 Cal.2d 92, 98 [187 P.2d 16]; *People* v. *Parry*, 105 Cal.App.2d 319 [232 P.2d 899].) The narrow question in the *present case is whether the concept of a fair trial*

*has been denied where the prosecution is allowed to arrange to withhold prosecution of a suspect during such time as a material witness might be available, and proceed to trial only when that witness is believed to be out of the jurisdiction and not available to testify.*

■ "The *intentional suppression of material evidence by the state would, of course, be a denial of a fair trial and due process.* This could, in some circumstances, be manifest by a failure of the prosecution to call certain witnesses. (*Curtis* v. *Rives,* 123 F.2d 936, 938 [75 App. D.C. 66] ; *cf. Mooney* v. *Holohan,* 294 U.S. 103 [55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406].) Such a denial would likewise exist where the prosecution was allowed to control the course of proceedings in a manner which would prevent the accused from presenting material evidence. ■ The rule requiring the disclosure of the identity of an alleged informer is designed to prevent such injustices. The rationale of that rule is that the defendant, through the testimony of the informer when his identity is made known, migh be able to rebut a material element of the prosecution's case and thereby prove his innocence. The denial by the prosecution of an opportunity for the defendant to seek out the informer and to defend by these means, where the testimony of the informer would be material to the issues, is unfair and oppressive to the defendant, and deprives him of due process of law. (See *Roviaro* v. *United States,* 353 U.S. 53, 63-64 [77 S.Ct. 623, 1 L.Ed.2d 639] ; *People* v. *McShann, supra,* 50 Cal.2d 802, 809, 810 [330 P.2d 33].)" [Emphasis supplied.]

Appellant here argues that in the instant case, he was similarly deprived of a fair trial, and the issues must be resolved in favor of his individual rights. We cannot agree. In the Kiihoa case, *supra,* the court cautioned that it was not holding that the mere unavailability of a material witness would necessarily result in a denial of due process in every case.

The appellant here, unlike the defendant in Kiihoa, did not deny his participation in the transaction or knowledge of the informer. He offered no evidence on his own behalf at the trial and thus did not put the credibility of the police officers in issue. ■ Even if he had done so, it would not make a difference as the identical question here presented, arising under facts identical, except for the date of the transaction and the defendant's denial thereof and offer of alibi evidence, and involving the same police officers and informant, was recently decided by this court (Division One) in *People* v. *Givens,* 191

Cal.App.2d 834, 839-840 [13 Cal.Rptr. 157] No. 3875 (opinion filed May 8, 1961) as follows:

"The facts of the instant case do not parallel those of *Kiihoa*. Officer Toomey testified that he last saw Russell, the informer, at '[t]he end of March'; appellant was arrested on March 31; Townsend, an acquaintance of the informer, stated that 'the last time I saw him was the day before he left San Francisco,' in 'the latter part of March. . . .' No direct testimony, however, showed that the prosecution delayed appellant's arrest until Russell's departure. . . .

"While appellant asserts 'it would appear more than coincidental that defendant was not arrested until after Russell was absent from the State of California and no longer within the jurisdiction of the Court,' we cannot hypothesize that the police intentionally delayed the arrest or sought to effectuate Russell's absence. The instant case basically differs from *Kiihoa* in which the police admitted the postponement of arrest for the express purpose of avoiding the adduction of the informant's testimony. Appellant's position must succumb to the general rule, as recognized in *Kiihoa,* that in the void of specific testimony as to any relation between appellant's arrest and the informer's withdrawal from the state, such departure falls within the terminology of *People* v. *Hammond* (1960), 54 Cal.2d 846 [9 Cal.Rptr. 233, 357 P.2d 289], a 'fortuitous incident.' "

We note, however, that in *People* v. *Hammond, supra,* the defendant had consented to the delay. While in the instant case, as in *People* v. *Givens,* the appellant has failed to show any prosecution deliberation or plan in the delay of the arrest for the purpose of avoiding the production of the informer as a witness, we are struck by the peculiar similarity between the facts of the two cases, and are constrained to comment that the continual reoccurrence of the delay between the criminal act and arrest and the resulting absence of the informer at all proceedings thereafter, may manifest an intent to subvert the purpose of the disclosure rule.

Judgment affirmed.

Draper, J., and Shoemaker, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 9, 1961.