[Crim. No. 3897.  First Dist., Div. One.  Sept. 19, 1961.]

THE PEOPLE, Respondent, v. JOHN WILBURN, Appellant.

Henry C. Krivetsky, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and John L. Burton, Deputy Attorneys General, for Respondent.

THE COURT.—In the Superior Court of the City and County of San Francisco defendant was charged with selling

heroin, and three prior felony convictions. He pleaded guilty to the priors and was convicted on September 20, 1960, by a jury of the sale of heroin. His motion for a new trial was denied and he was sentenced to the state prison for the term prescribed by law. He appeals from the judgment and from the order denying a new trial.

This case is similar in *modus operandi* to *People* v. *Givens,* 191 Cal.App.2d 834 [13 Cal.Rptr. 157]; *People* v. *McKoy,* 193 Cal.App.2d 104 [13 Cal.Rptr. 809] and *People* v. *Robison,* 193 Cal.App.2d 410 [14 Cal.Rptr. 181], filed June 27, 1961. Also, the same San Francisco police officers, Officers Toomey and Higgins, and the same undercover agent, Willie Russell, are involved.

The gist of the operation is that the two officers search the undercover operator in an automobile and thus make sure that there are no narcotics on him. They then give him $20. One officer takes a position in a building where he can see two predetermined areas of two streets. The other officer uses an automobile. The officers communicate with each other by walkie-talkie. The undercover operator is always in the sight of one or the other officer. The operator is seen to contact an individual. He contacts a seller of narcotics, makes his buy, and then returns to the officer's automobile. One of the officers then searches him to determine that the money is gone and that no narcotics other than that handed over have been obtained. This was the procedure followed in the instant case. The undercover operator, after contacting the defendant (he entered defendant's automobile and rode a short distance with him), returned to the officer's automobile and turned over to him a small package which was later determined to contain heroin. Search disclosed that the money was gone and that there were no other narcotics.

Three points are urged on the appeal. The first is that "the prosecution's repeated statements commenting directly on the fact that defendant did not take the witness stand is a violation of the provision against self-incrimination in the California Constitution." Defendant concedes that since the 1934 amendment to section 13 of article I of the state Constitution, counsel can comment on defendant's failure to explain or deny any evidence against him, but contends that this is as far as counsel can go, and that counsel cannot mention his failure to take the stand. Defendant draws a distinction between comments such as defendant "has failed to deny or explain . . . ," which are admissible, and "de-

fendant did not take the stand to . . . explain or deny . . .'' He contends that *People* v. *Adamson,* 27 Cal.2d 478, 488 [165 P.2d 3], prohibits comments on ''defendant's failure to take the stand . . .'' The contention is adequately rebutted by the sentence appearing at page 486 of the *Adamson* opinion: ''The prosecuting attorney commented repeatedly on the failure of the defendant to take the stand.'' There are many opinions of the courts holding this type of comment to be proper. ''Numerous cases in this jurisdiction have held that it is proper for the prosecution to point out to the jury that the defendant has failed or refused to take the witness stand and that he has failed to explain or deny incriminating facts which have been produced against him, and especially in cases where the facts concern matters which are peculiarly within the knowledge of the defendant, as in the present case. Such comments by the court or the district attorney do not violate any constitutional rights of the defendant, and the provisions of the above-cited constitutional provision and statute have been held not to violate any provision of the United States Constitution. [Citations.] Numerous cases have upheld the right of the district attorney to so comment. [Citations.]'' (*People* v. *Sauer,* 163 Cal.App.2d 740, 746-747 [329 P.2d 962].)

▉ Defendant's second point is that the police violated the due process of law clause of the Constitution by discouraging their informer-employee from remaining available as a witness. Defendant cites *People* v. *Williams,* 51 Cal.2d 355 [333 P.2d 19], and *People* v. *Diaz,* 174 Cal.App.2d 799 [345 P.2d 370], each holding that the police cannot thwart an accused's attempt to locate an informant-participant by failing to disclose any information they might have as to his identity and whereabouts. Defendant does not contend, however, that such a nondisclosure took place in the instant case. Rather, he contends that the police encouraged the informant's disappearance by giving him $200 for his services and telling him they were going to make a raid on the people from whom he had made purchases, and that after the raid there would be no chance of his doing anything more for them. Paying for and terminating an informant's employment, however, is not in and of itself ''encouraging him to disappear.'' What is more, this court cannot, without evidence, infer improper motives or activities on the part of the officers. To the contrary, in the absence of evidence indicating otherwise it must be ''presumed that the officers regularly and lawfully per-

formed their duties." (*People* v. *Farrara*, 46 Cal.2d 265, 269 [294 P.2d 21] ; Code Civ. Proc., § 1963, subd. 15.)

Defendant's final contention is that the evidence is insufficient to support the verdict. The verdict rests substantially upon the testimony of Officers Toomey and Higgins that the undercover operator was under sufficient observation by them to preclude the possibility of his having obtained the narcotics from some source other than the defendant. Officer Toomey testified that while trailing the agent by automobile he kept him in view at all times. On cross-examination he testified that he was at times a full block behind the agent; that there were "quite a few cars and people on the street"; that parking was "bumper to bumper"; and that, due to automobiles passing between them, there may have been "seconds" when the undercover operator was out of his vision. Defendant relies upon this to support his contention that the officer's testimony that the agent was kept in view was so inherently improbable and unbelievable that it should be disregarded by this court. ██ In answer to this contention we reiterate the statements of the court in *Evje* v. *City Title Ins. Co.* (1953), 120 Cal.App.2d 488, 492 [261 P.2d 279] : "There are expressions—nearly all dicta—in one form or another to the effect that an appellate court will reject testimony inherently improbable or impossible of belief in some 40 civil cases collected in 2 McKinney's Digest, Appeal and Error, section 1267. However, only in one of these cases did the appellate court actually reject as unbelievable testimony believed by the trier of facts, and that one case, *Lind* v. *Closs* (1891), 88 Cal. 6 [25 P. 972], is a rape case in which the Supreme Court rejected the testimony of the complaining witness so that the subject matter gives it an exceptional character. The absence of decisions rejecting testimony believed in the trial court is understandable when we see that for rejection it is required that the testimony be 'wholly unacceptable to reasonable minds' [citation] ; 'unbelievable *per se*' [citation] such that 'no reasonable person could believe the testimony' [citation]. It has even been held that an appellate court will not substitute its evaluation of the evidence or its opinion as to the credibility of the witnesses for that of the trial court 'even though to some triers of fact the evidence . . . would have seemed so improbable, impossible and unbelievable that a judgment contrary to that . . . on appeal would have inevitably followed.' [Citation.]" See also 3 Witkin, California Procedure, Appeal, Supplement pages 110-111, § 86. *People* v.

*Rumph,* 164 Cal.App.2d 262, 267 [330 P.2d 694], is in accord with this view. It holds that the evidence must bear "upon its face the brand of improbability, or . . . may be said to be unbelievable, *per se.* . . ." ■ We can say neither that there was such an "observation gap" as to bring this case within the rule of *People* v. *Barnett,* 118 Cal.App.2d 336 [257 P.2d 1041], nor that the testimony of Officer Toomey was "wholly unacceptable to reasonable minds."

Judgment and order affirmed.

BRAY, P. J., and TOBRINER, J.—This opinion was written prior to his death by Honorable Ralph E. Hoyt, duly assigned to sit pro tempore with this court. We adopt it as the opinion of the court.

A petition for a rehearing was denied October 13, 1961, and appellant's petition for a hearing by the Supreme Court was denied November 15, 1961.