[Crim. No. 1815.   Fourth Dist.   Oct. 11, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD M. GALVAN, Defendant and Appellant.

Peter J. Hughes, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Richard S. Cohen, Deputy Attorney General, for Plaintiff and Respondent.

STONE, J.*—Defendant was charged by indictment with two counts of sale of narcotics, violation of Health and Safety Code section 11501, and, by a supplement to the indictment, with a prior conviction of a felony. Defendant admitted the prior conviction but pleaded not guilty to each count of the indictment. A jury found him guilty on each count. His motion for a new trial was denied; judgment was entered pursuant to the jury verdict; and he was sentenced to the state prison on each count, the sentences to run concurrently. Defendant has appealed from the judgment and from the denial of his motion for a new trial.

Fernando A. Maldonado was an agent for the Bureau of Narcotic Enforcement of the State of California, doing undercover work in the San Diego area between January and May, 1961. One Effrem Tucker was a "special employee" of the Bureau. Maldonado described a special employee as "a person employed and is paid, in this case was paid $10 per day for giving us information and introducing me to narcotic users and peddlers here in the San Diego area." On March 5 Maldonado, with Tucker as a passenger, parked a state automobile next to a curbing in the San Diego area. Prior to

*Assigned by Chairman of Judicial Council.

that Tucker had "set-up" a rendezvous at this location with defendant, who was waiting. He approached on the passenger's side, Tucker informed him that he and Maldonado were looking for "stuff," referring to heroin; Maldonado passed Tucker $20 and Tucker handed it to defendant. In return defendant handed four papers to Tucker, who passed them on to Maldonado. The four papers contained heroin. Two days later Maldonado, with Tucker as his passenger, parked his car at the rear of defendant's car on a public street in San Diego. The meeting had been prearranged by Tucker. Defendant walked back to the car, approaching Tucker on the passenger's side. Again Maldonado gave Tucker $20. Tucker passed the money to defendant who, in turn, handed four white papers to Tucker and Tucker passed them to Maldonado. They contained heroin.

Maldonado testified that he masqueraded as a fisherman from San Pedro looking for a source of narcotics; that he enlisted Tucker's aid to make contact with a seller; that Tucker arranged for him to meet defendant. Although the narcotic sales occurred on March 5 and March 7, defendant was not arrested until May 12. The delay in defendant's arrest was occasioned by Maldonado's operations as an undercover agent. His relations with persons trafficking in narcotics required that Maldonado retain his anonymity until May 12.

The record is not clear whether defendant learned of Tucker's identity on May 12, at the time he was arrested, or on May 16, when he was arraigned and served with a transcript of the proceedings before the grand jury. In any event, on May 16 the transcript revealed to defendant that Tucker had acted as an informer. It also revealed that Tucker had been arrested for burglary prior to his participation in the narcotics sales on March 5 and 7; that Tucker pleaded guilty to the charge of burglary; that on March 24, by proceedings in the Superior Court of San Diego County, he was placed on five years' probation; that as a condition of probation Tucker was committed to the United States Public Health Service Hospital in Texas for treatment as a narcotics addict.

Defendant does not challenge the sufficiency of the evidence to prove that the sales were made. His appeal is centered upon his defense of entrapment, his contention being that Tucker furnished him the narcotics and induced him to sell them to Maldonado as a favor. Defendant testified that he simply acted as a "front" for Tucker. This he did after Tucker explained that Maldonado had purchased narcotics

from him in the past but that he would not buy from him now because Maldonado claimed the narcotics had been of poor quality. Tucker persuaded defendant to make the sales for him and allay Maldonado's doubts.

It is not denied by the prosecution that defendant's arrest was delayed in order to preserve Maldonado's anonymity. This delay, argues defendant, permitted Tucker to leave California between the time the alleged crimes were committed and the time of defendant's arrest, so that defendant was deprived of a material witness at his trial. This, it is asserted, constitutes suppression of evidence by the prosecution, a denial of due process, and reversible error.

The record reflects that defendant at the time of his arraignment May 16, was aware of the identity and whereabouts of the informer, Tucker. However, the record discloses no effort on the part of defendant to locate Tucker prior to October 4, two days before the trial. Furthermore, defendant cannot in good conscience argue that he was allowed insufficient time to prepare for trial since the trial, which was originally set for July 31, was continued to October 6 at his request.

Defendant relies largely upon the reasoning of the court in *People* v. *Kiihoa*, 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673]. The case at bar is distinguishable from the *Kiihoa* case in three important respects. First, the informer here was not sent out of the state by the police or the prosecution, as in *Kiihoa*. There was no design by enforcement officers or the prosecution to prevent the informer from appearing as a witness for the defendant. The superior court ordered the informer committed to a federal hospital for narcotics addicts in Texas as one of the conditions of his five-year term of probation.

Second, the delay in defendant's arrest was not for the purpose of preventing his learning the identity of the informer, but to preserve the anonymity of the undercover agent, Maldonado, who was working on other cases. To have arrested defendant and disclosed the identity of the agent would have destroyed the efficacy of preliminary work by the agent with other persons suspected of trafficking in narcotics.

The third distinction is that in *Kiihoa* when the defendant was arrested the police disclaimed any knowledge of the informer's whereabouts. The police, by design, made it impossible for Kiihoa to locate the informer to seek his assistance in preparing his defense. In the case before us the whereabouts of the informer and his identity were disclosed to

defendant. Furthermore the informer, although in a government hospital in the State of Texas, was under the supervision of the San Diego County Probation Office. There is nothing in the record indicating that the informer could not have been subpoenaed pursuant to Penal Code sections 1334 et seq.

The three critical circumstances just related not only distinguish the case at bar from *People* v. *Kiihoa, supra,* but they also bring the case within the ambit of *People* v. *Sauceda,* 199 Cal.App.2d 47, 56 [18 Cal.Rptr. 452] ; *People* v. *Wilburn,* 195 Cal.App.2d 702, 705 [16 Cal.Rptr. 97] ; *People* v. *Castedy,* 194 Cal.App.2d 763, 768 [15 Cal.Rptr. 413] ; *People* v. *McKoy,* 193 Cal.App.2d 104, 110 [13 Cal.Rptr. 809] ; *People* v. *Givens,* 191 Cal.App.2d 834, 840 [13 Cal.Rptr. 157]. The rationale of these cases is summarized in *People* v. *Sauceda, supra,* page 56, as follows :

"In all of these cases, as in *People* v. *Kiihoa, supra,* the suspect was not arrested until after the informant had left the jurisdiction. Yet the cases have uniformly held that in the void of specific testimony that the police encouraged the informer to disappear [as was the case in *Kiihoa*], the courts cannot infer improper motives or activities on the part of the officers, but must presume that the officers regularly and lawfully performed their duties (*People* v. *Farrara,* 46 Cal.2d 265 [294 P.2d 21]), as well as that the payment for and termination of an informer's employment is not in and of itself 'encouraging him to disappear.' (*People* v. *Wilburn, supra.*)"

If we understand defendant's argument, it is that intentional delay in making an arrest for the purpose of withholding the identity of an informer, cannot be justified upon the ground of public interest if the delay deprives a defendant of a substantial right. It is apparent that defendant's argument paraphrases the reasoning expressed by the Supreme Court in *People* v. *McShann,* 50 Cal.2d 802 [330 P.2d 33] ; *Priestly* v. *Superior Court,* 50 Cal.2d 812 [330 P.2d 39] ; and *Mitchell* v. *Superior Court,* 50 Cal.2d 827 [330 P.2d 48]. It cannot be denied that two fundamental judicial concepts, public interest and the right of an accused to defend himself, are here in conflict. However this case is not a suitable vehicle for pursuing the interesting question of when the right of an accused to defend himself outweighs public interest in delaying an arrest to protect an informer, because defendant has made no showing that by the exercise of a reasonable

amount of effort he could not have secured the presence of the informer as a witness. Defendant's own lack of due diligence contributed largely to the circumstance about which he now complains. The record reveals no excuse for the failure to attempt to locate and subpoena the informer pursuant to Penal Code sections 1334 et seq., nor does defendant's brief offer any explanation for this neglect. ██ Also it follows from defendant's failure to make a showing of due diligence that it was not error to deny his request for a continuance in order to locate the informer. (*People* v. *McShann*, 177 Cal. App.2d 195, 200 [2 Cal.Rptr. 71].)

██ The foregoing discussion of defendant's first ground of appeal disposes of his second contention that the court erred in denying his offer of proof concerning his efforts to locate the informer. The trial court was justified in not permitting this evidence to go to the jury because the offer of proof showed, in addition to the facts hereinabove set forth, that the subpoenas secured two days before the trial were issued to agencies which had no control over the informer. Counsel for defendant had knowledge that the informer was under the supervision of the probation office, yet he had subpoenas issued in care of the State Bureau of Narcotics, and in care of San Diego Police Department Narcotics Detail. Each agency returned the subpoena, denying knowledge of Tucker's whereabouts. Thus defendant's offer of proof failed to support his charge that the prosecution was guilty of willful suppression of evidence.

██ Likewise defendant's failure to make an adequate offer of proof that there was suppression of evidence negates his argument that the court erred by refusing to give his instruction on the subject. Defendant offered the following:

"DEFENDANT'S REQUESTED INSTRUCTION No. 6 If the evidence demonstrates that a witness could give material and relevant testimony on the issues in question and that the ability to have such a witness available at trial was within the control of one of the parties but such witness was not called to testify, then you may infer that if such witness were called to testify, that he or she would give testimony adverse to the side failing to call such witness."

The court chose to give CALJIC No. 23, which reads:

"Neither the prosecution nor the defense is required to call as witnesses all persons who are shown to have been present at any of the events involved in the evidence, or who

may appear to have some knowledge of the matters in question in this trial; nor is the prosecution or defense required to produce as exhibits all objects or documents that have been referred to in the testimony, or the existence of which may have been suggested by the evidence.''

We believe defendant's argument is untenable, first, because his instruction assumes that Tucker was within the control of the prosecution. The instruction recites ''that the ability to have such a witness available at trial was within the control of one of the parties. . . .'' The evidence does not support this assumption. Second, defendant's argument presupposes that it was the duty of the prosecution to call the informer as a witness. ■■ The prevailing rule is stated in *People* v. *Kiihoa, supra,* page 752, as follows:

''The prosecution is not required to call any particular witness, nor to put on all the evidence relating to a charge so long as all material evidence bearing thereon is fairly presented in such a manner as to accord to the defendant a fair trial. (*People* v. *Tuthill,* 31 Cal.2d 92, 98 [187 P.2d 16]; *People* v. *Parry,* 105 Cal.App.2d 319 [232 P.2d 899].)''

(See also *People* v. *McShann, supra,* 177 Cal.App.2d 195, 199; *People* v. *Castedy, supra,* 194 Cal.App.2d 763, 769.)

■■ And again in *Kiihoa,* page 752, the Supreme Court said:

''The denial by the prosecution of *an opportunity for the defendant to seek out the informer* and to defend by these means, where the testimony of the informer would be material to the issues, is unfair and oppressive to the defendant, and deprives him of due process of law. (See *Roviaro* v. *United States,* 353 U.S. 53, 63-64 [77 S.Ct. 623, 1 L.Ed.2d 639]; *People* v. *McShann, supra,* 50 Cal.2d 802, 809, 810.)'' (Emphasis added.)

Defendant failed to take advantage of his opportunity to seek out the informer. As we have noted, defendant put off subpoenaing Tucker until two days before the trial, although he had both ample time to locate him and the means of compelling his attendance by following the procedure provided by Penal Code sections 1334 et seq. Furthermore, the tardy attempt to subpoena Tucker was misdirected and inadequate. Defendant cannot avoid the consequences of his failure to seek out the informer when he had the opportunity to do so, and likewise he cannot shift to the prosecution the burden of calling the informer as a witness for the defense.

■■ Defendant's final contention is that the court erred

in instructing the jury on his defense of entrapment because insufficient emphasis was placed on the role of persons other than law enforcement officers. The court gave CALJIC Instructions 851 and 854, as follows:

"The law does not tolerate a person, particularly a law enforcement officer, generating in the mind of a person who is innocent of any criminal purpose, the original intent to commit a crime thus entrapping such person into the commission of a crime which he would not have committed or even contemplated but for such inducement; and where a crime is committed as a consequence of such entrapment, no conviction may be had of the person so entrapped as his acts do not constitute a crime.

"If the intent to commit the crime did not originate with the defendant and he was not carrying out his own criminal purpose, but the crime was suggested by another person acting with the purpose of entrapping and causing the arrest of the defendant, then the defendant is not criminally liable for the acts so committed."

"It is important in considering the defense of entrapment to ascertain whether the acts charged as constituting the offense were the result of the intent of some other person to place the accused in a position where he might be charged with the offense, in which event the defendant may not be convicted or whether the defendant, acting in pursuance of his own intent, committed the acts, such other person merely affording him the opportunity of doing so, in which latter event the defense of entrapment would not relieve the defendant from responsibility."

In our opinion the foregoing instructions completely and adequately cover the defense of entrapment, including a situation where a person other than a law enforcement officer is involved. We find no merit in appellant's contention that the court erred in refusing to give his proffered instruction, which reads as follows:

"DEFENDANT'S REQUESTED INSTRUCTION No. 7 In order to make the defense of entrapment available to a defendant, the person doing the entrapping need not be a law enforcement officer. If the offense was suggested by another person with the purpose of entrapping and causing the arrest of the defendant, then the defendant is not criminally liable for the acts committed, whether or not this other person was a law enforcement officer."

The substance of defendant's proposed instruction is fully covered by the two instructions which were given. A court is not bound to give a particular instruction submitted by a party simply because it is applicable to the case. Appropriate instructions may be selected by the court from those submitted by the parties, or the court may use its own instructions, provided the instructions given by the court embrace and fairly state all points of law on all the material elements of the case. (*People* v. *Clark*, 116 Cal.App.2d 219, 224 [253 P.2d 510]; *People* v. *Latona*, 2 Cal.2d 714, 727 [43 P.2d 260]; *People* v. *Young*, 70 Cal.App.2d 28 [160 P.2d 132]; 2 Witkin, California Procedure, § 52(b), p. 1780.)

The judgment and the order denying motion for new trial are affirmed.

Griffin, P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 5, 1962. White, J.,* participated therein.

*Retired Justice of the Supreme Court sitting pro tempore under assignment by the Chairman of the Judicial Council.