[Crim. No. 10501. Second Dist., Div. Four. Nov. 30, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES J. DAVIS, Defendant and Appellant.

James J. Davis, in pro. per., and Richard H. Levin, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—Defendant appeals from the judgment entered upon his conviction of three counts, charged in a grand jury indictment, of sale of heroin (Health & Saf. Code, § 11501). Defendant waived a jury and was tried by the court after a six-day continuance was granted the People, over defendant's objection, because a witness was on military leave. Defendant was denied probation and sentenced to state prison.

On March 2, 1964, Officer Williams, a Los Angeles police officer assigned to undercover work, met defendant on the street corner of 12th and Central. The officer was accompanied to this location by a person named Samuel Kinsey who had been used in the past by the police to obtain introductions to narcotics peddlers. Defendant was asked if he had "anything." He replied that he did. The officer and Kinsey said that they wanted to "get one." Defendant answered that he had it, that they would have to get the money quickly. Officer Williams then handed Kinsey a $10 bill, which Kinsey passed to defendant. Defendant took a pink balloon from his mouth and handed it to Kinsey, who in turn gave it to the officer. On March 16, 1964, at about 12:30 p.m., Officer Williams and Kinsey were standing on the corner of Adams and Kenwood Streets when a 1956 Buick pulled up. Defendant was seated on the passenger side. Defendant was asked whether he had any, and he again replied that he did. When handed a $10 bill, he took a yellow balloon from his mouth, gave it to Kinsey and the latter immediately handed it to the officer. The next day, March 17, a similar transaction was repeated when defendant drove up in the same Buick, was given two $5.00 bills, and then handed Kinsey a purple balloon which he removed from his mouth. Kinsey gave the balloon to the officer. After each of the above described transactions of March 2, 16 and 17, the balloons given to the officer were taken to the Police Administration Building where they were marked for identification and tested. It was stipulated that the contents of the balloons were found to be heroin.

When the officer first met defendant he noticed that defendant had rather large bumps on his face, and that he had a mustache. After meeting defendant the officer checked the police files and found defendant's picture.

In cross-examining Officer Williams, defense counsel elicited the fact that certain notes recorded by the officer, after he met defendant, described defendant as being approximately 5 feet 11 inches tall. Defendant took the witness stand to testify that he was 5 feet 8 and not 5 feet 11 as the officer's notes had indicated. Defendant, however, did not offer any other evidence to refute the prosecution's case.

 Counsel appointed to represent defendant in this appeal suggests as the sole ground for reversal, in effect, that defendant was denied a fair trial because of the "unexplained absence at the trial of the informer-go-between."

484

The case of *People* v. *Kiihoa*, 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673], is cited in support of this contention.

In *Kiihoa, supra,* the evidence affirmatively established that the prosecution chose to release the defendant rather than to disclose the identity of an informer, and then deferred prosecuting him for approximately five months until the informer had left the state. The court held that such action by the state indicated an attempt to circumvent the rule requiring the disclosure of the identity of an informant, the court reasoning that (at p. 752), "The rationale of that rule is that the defendant, through the testimony of the informer when his identity is made known, might be able to rebut a material element of the prosecution's case and thereby prove his innocence. The denial by the prosecution of an opportunity for the defendant to seek out the informer and to defend by these means, where the testimony of the informer would be material to the issues, is unfair and oppressive to the defendant, and deprives him of due process of law. [Citations.]" The court in *Kiihoa,* however, was careful to point out (at p. 754), "It is not intended to hold that the mere unavailability of a material witness would necessarily result in a denial of due process in every case." On the contrary, as stated in *People* v. *Galvan,* 208 Cal.App. 2d 443, 448 [25 Cal.Rptr. 128], "[T]he cases have uniformly held that in the void of specific testimony that the police encouraged the informer to disappear [as was the case in *Kiihoa*], the courts cannot infer improper motives or activities on the part of the officers, but must presume that the officers regularly and lawfully performed their duties [citation]. . . ." ▪ The law is clear that the prosecution is not required to call any particular witness or to put on all the evidence which relates to the charge so long as all the material evidence is fairly presented in such a manner as to accord a fair trial to defendant. (*People* v. *Kiihoa, supra,* 53 Cal.2d 748, 752.)

▪ In the instant case, Officer Williams testified, on cross-examination, that he first met the informer, Kinsey, through arrangements made by Officer Cain of the Narcotics Division; subsequently Kinsey introduced him to about 120 narcotics peddlers; Kinsey was paid by the police for arranging purchases of narcotics; he had no knowledge whether arrangements were made to have Kinsey available for trial or whether arrangements were made to have him unavailable; although he believed that Kinsey knew about the impending

filing of indictments, Kinsey did not indicate that he wanted to be informed ahead of time so that he could leave the jurisdiction; he neither told Kinsey that he might be needed at the trials nor that he would not be used. In addition the officer described Kinsey; stated that he did not know where Kinsey lived; stated that Kinsey never was given any of the narcotics but that he was a user; that he understood that Kinsey's mother and brother lived in Los Angeles; that Kinsey had said that his mother lived on 56th Street; and that, after initially reaching Kinsey through Officer Cain, he always met Kinsey on a street corner.

We find no evidence in this record which in any way indicates or could be construed to indicate that the police (or the prosecution) were responsible for the failure of Kinsey to appear at the trial (or that the continuance of the trial was for a reason other than that given). The *Kiihoa* case is thus not in point. Rather, clearly applicable here is the language of the court in *People* v. *Galvan, supra,* quoted above, that "the courts cannot infer improper motives or activities on the part of the officers, but must presume that the officers regularly and lawfully performed their duties."

The judgment of conviction is affirmed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied December 16, 1965, and appellant's petition for a hearing by the Supreme Court was denied January 26, 1966.