[Crim. No. 11223. Second Dist., Div. Two. Mar. 16, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ARNOLD LAFAYETTE ADAMS, Defendant and Appellant.

502

Edward L. Lascher, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—On March 2, 1965, appellant was charged by information with "Assault by Means of Force Likely to Produce Great Bodily Injury" (in violation of Pen. Code, § 245) committed on Evelyn Sheetz. He pleaded not guilty. On May 3, 1965, after jury trial, appellant was found guilty as charged and sentenced to state prison for the term prescribed by law.

On the evening of February 4, 1965 at about 10 p.m. police officers of the Long Beach Police Department went to appellant's apartment on Bonnie Brae Avenue on a narcotics investigation. Officer Castillo testified that before entering the apartment, he heard Mrs. Sheetz say through an open window: " 'I am going to leave this apartment. I am afraid of you. I am not going to stay here any longer.' " The officer stated he heard appellant reply: " 'You are not going no place. You are going to stay right here.' "

The officers entered and found appellant, Mrs. Sheetz and three unidentified men. The apartment was orderly but there were wine bottles and coffee cups around the room. Mrs. Sheetz, on learning Castillo was a police officer, told him she was glad he had come, that appellant had been threatening to beat her, and that she wanted to leave with the officer. Appellant was within hearing distance but said nothing.

The officer remained in the apartment about fifteen to twenty minutes, questioned Mrs. Sheetz about drugs, searched her purse and the apartment for narcotics, and left without finding any. He stated that Mrs. Sheetz was fully dressed and answered his questions coherently. Mrs. Sheetz did not leave the apartment when the officers left.

Officer Seminara testified that at 2:15 a.m. on the morning of February 5, 1965, he responded to a call reporting a suspected wife-beating at appellant's apartment. Appellant refused him admission when he identified himself. He broke in the door and entered. Appellant was clad in shorts. There was blood on his hands. The apartment was in complete disarray. One Louis Husband was passed out in an apparent drunken stupor on the floor. Mrs. Sheetz was lying unclothed on the bed and moaning. Her eyes were purple and swollen shut. Her lips were also swollen and there were bruises and abrasions over her entire body. She was partially incoherent, but in appellant's presence, stated that appellant had struck her.

The victim was placed in an ambulance. Appellant was taken into custody and placed in a police car. Officer Seminara advised appellant of his constitutional rights to remain silent, that anything he said could be used against him, and of his right to have an attorney. Appellant was asked "why he had done this" and appellant stated that the victim had a pill habit, that this was the only way to cure her, that he had done it before, and that he knew Mrs. Sheetz very well. The officer testified appellant did not appear to be intoxicated at the time, and that his statements were free and voluntary.

Medical evidence showed that Mrs. Sheetz had severe contusions about her buttocks and thighs, a possible skull fracture, and blood in her cerebral spinal fluid. The doctor who examined her at Harbor General Hospital on the early morning of February 5 stated he believed Mrs. Sheetz' injuries to have been caused by a severe beating. On cross-examination of the doctor, appellant fortifying the defense to which he and other defense witnesses testified, asked if it was possible that the victim had been injured by a series of falls into diverse objects. The doctor answered it was "possible" although not "probable".

Appellant testified that Mrs. Sheetz had been staying at his apartment recently because she was afraid to be alone and he was trying to help her, as he had done in the past, to break her pill-alcohol habit. He stated that after the 10 p.m. visit by Officer Castillo, he had fallen asleep and was awakened by the

noise of breaking glass. Mrs. Sheetz was drunk, and he told her to clean up the mess she had made. She cut him with a piece of broken glass. He described a series of falls Mrs. Sheetz took in the kitchen, bedroom and bathroom, which led to her injuries. Appellant denied beating the victim, but admitted he had reached into her mouth at one point to remove some pills she was trying to take and had also pulled out her false teeth in the process.

Appellant asserted that his statement to police officers (he "had done this before to help her") referred not to beating Mrs. Sheetz but to taking away her pills and alcohol to prevent her from consuming them. This interpretation by appellant of his statement made to the officers when he was arrested is also the foundation of his criticism of the reference to this statement in the instructions as a confession.

Mrs. Sheetz was not called to testify by the People or by appellant.

Numerous contentions of error are urged.

1. The alleged confession was improperly admitted under the rules set forth in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and the jury was improperly instructed in respect to the alleged confession.

2. Failure of the prosecution to call the victim, Mrs. Sheetz, to testify, constituted a violation of due process; his own lawyer's failure to insist on her presence in court is indicative of inadequate representation at trial. Finally, the court did not instruct on the effect of the absence of Mrs. Sheetz and her failure to testify.

3. "A combination of rampant misconduct by the prosecutor, lack of control by the court, and inadequate representation by the public defender (whether produced by ineptitude, timidity, or torpor) reduced the trial to a sham and mockery."

1. Officer Seminara testified that appellant did not appear to be intoxicated at the time of his arrest, and that the statements to him were voluntarily made. Appellant, referring to the statement made by Officer Seminara, testified that he refused to tell the officer anything in addition after the officer allegedly called him "a no-good so-and-so." This later admission, uncontradicted by any other evidence, warrants at least a sound inference by the trier of fact that appellant voluntarily waived the rights of which he had just been warned by answering the officer's question. (See *People* v. *Sanchez,* 239

Cal.App.2d 51, 55 [48 Cal.Rptr. 424]; *People* v. *Palmer,* 236 Cal.App.2d 645, 649-650 [46 Cal.Rptr. 449].)

Appellant did not deny the statement. Rather he explained what he meant by the statement to show that he did not admit beating Mrs. Sheetz but was referring only to his effort to deprive her of her pills and intoxicants. This raised a factual issue as to the meaning and intent of the words spoken—it in no way challenged the voluntariness of the statement itself. (See *People* v. *Culp,* 241 Cal.App.2d 352, 357 [50 Cal.Rptr. 471].) "In view of the warning as to his constitutional rights, the court properly received the above statements in evidence against [Adams]." (*People* v. *Luker,* 63 Cal.2d 464, 473 [47 Cal.Rptr. 209, 407 P.2d 9].)

Appellant contends as heretofore noted that his statement did not constitute a confession, and he was prejudiced by repeated references to the statement as a confession in argument and in the court's instructions to the jury.

Where a defendant's statement affords circumstantial evidence of the elements necessary to support a conviction, a statement is a confession. (*People* v. *Sears,* 62 Cal.2d 737, 743-744 [44 Cal.Rptr. 330, 401 P.2d 938].) Appellant's statement, made moments after he had been taken into custody and told he was being arrested on suspicion of beating Mrs. Sheetz, could, if believed, constitute a confession of the crime of assault. At best, appellant's own interpretation of his words indicated a motive or basis for the beating. The words in themselves were not ambiguous. (See *People* v. *Mora,* 232 Cal. App.2d 400, 406 [42 Cal.Rptr. 725], where the court held that a defendant's statement to a police officer who had just found heroin in his presence " 'that it was his stuff and that he would go for it' cannot be construed as anything other than a full confession of a violation of Health and Safety Code section 11500.")

Nevertheless, the jury instructions pointed out that appellant had made a statement outside of court "tending to prove his guilt of the crime for which he is on trial," which statement may be either a confession or an admission. The jury was instructed as to what constitutes a confession or an admission (CALJIC 29, Revised). They were also instructed as to determining voluntariness of the extrajudicial statement (CALJIC 29A, Revised). The jury was further instructed to consider all the instructions as a whole (CALJIC 5) so that whether the jury deemed the statement an admission or a confession, its voluntariness was to be considered. If

further, or different, or recently re-revised instructions were desired, as appellant contends here he was entitled to, it was incumbent on appellant to request them at trial. (*People* v. *Robinson,* 180 Cal.App.2d 745, 752 [4 Cal.Rptr. 679].) We find no prejudice in the instructions actually given.

2. Relying on *People* v. *Kiihoa,* 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673], appellant contends that the failure of the prosecution to produce Mrs. Sheetz at trial was a suppression of evidence denying him due process.

In *Kiihoa,* the court stated at page 752: "The right of an accused to be confronted with witnesses is the right to have witnesses who testify do so in the presence of and subject to cross-examination by the defendant. The prosecution is not required to call any particular witness, nor to put on all the evidence relating to a charge so long as all material evidence bearing thereon is fairly presented in such a manner as to accord to the defendant a fair trial. (*People* v. *Tuthill,* 31 Cal.2d 92, 98 [187 P.2d 16] ; *People* v. *Parry,* 105 Cal.App.2d 319 [232 P.2d 899].) The narrow question in the present case is whether the concept of a fair trial has been denied where the prosecution is allowed to arrange to withhold prosecution of a suspect during such time as a material witness might be available, and proceed to trial only when that witness is believed to be out of the jurisdiction and not available to testify."

In the instant case, there is *no* evidence of a deliberate attempt by the prosecution to keep Mrs. Sheetz from the courtroom, or "wilfully suppress" evidence as that phrase is used in Code of Civil Procedure, section 1963, subdivision 5, or that anything she could testify to would be prejudicial to respondent. Medical testimony demonstrated that: Mrs. Sheetz had suffered severe injuries on the night of February 4-5 ; she had a pre-existing brain tumor ; she was an acute alcoholic suffering from delirium tremens; she had a pill habit; she was at times incoherent; and that about a week prior to trial she was treated at Harbor General Hospital for a broken leg. The record indicates that respondent had sufficient other evidence to support a conviction. The fact that Mrs. Sheetz was not called cannot on the record before us be equated with suppressing evidence. (*People* v. *Tuthill, supra,* at pp. 97-98.)

Appellant did not attempt to call Mrs. Sheetz as a witness, or request any continuance in order to produce her in court. At no time during trial did appellant assert that respondent

508

was keeping Mrs. Sheetz away from the proceedings in an effort to hurt his case. Appellant relies on *Brady* v. *Maryland,* 373 U.S. 83, 87 [10 L.Ed.2d 215, 83 S.Ct. 1194], for the proposition that failure to produce evidence which should have been produced violates due process without respect to the good faith or bad faith of the prosecution. In *Brady,* however, the court expressly stated at page 87: ''We now hold that the suppression by the prosecution of evidence favorable to an accused *upon request* violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'' (Italics added.) There is no showing, even remote, suggesting that Mrs. Sheetz would have testified favorably to appellant.

In his closing argument to the jury, appellant's counsel emphasized the failure of the prosecution to call Mrs. Sheetz, indicating that the matter had not been overlooked by the defense and also that appellant's counsel was making what he thought was the best tactical advantage to the defense because of the omission.

▮ As to the failure of the court on its own motion to instruct the jury on the effect of nonproduction of evidence, and the alleged error in instructing, instead, that neither side was required to call as witnesses ''all persons who have been present at any of the events involved'' (CALJIC 23), the discussion in *People* v. *Galvan,* 208 Cal.App.2d 443, 449-450 [25 Cal.Rptr. 128], is particularly appropriate. In *Galvan,* the court refused an instruction on the adverse effect of the prosecution's failure to call a particular witness and gave CALJIC 23 instead. The appellate court pointed out that unlike *Kiihoa, supra,* there was no evidence of wilful suppression of a material witness and reiterated that *Kiihoa* dealt with a defendant denied even an ''opportunity'' (*Kiihoa, supra,* at page 752) to defend himself by the witness' testimony. Both in *Galvan* and here, defendants failed to avail themselves of the opportunity, if desired, to have a witness testify. The court concluded that CALJIC 23 was proper under the circumstances—a defendant ''cannot shift to the prosecution the burden of calling the informer as a witness for the defense.'' (*Galvan, supra,* at page 450; see *People* v. *Fontaine,* 237 Cal. App.2d 320, 332-333 [46 Cal.Rptr. 855].)

3. ▮ An examination of the record indicates that appellant's contentions of misconduct on the part of the prosecutor and inadequate representation by his trial attorney are without merit. To the contrary, the record shows a competent de-

fense to overwhelming testimony of wrongdoing. It should be pointed out that an attorney has considerable discretion in the conduct, both tactically and substantively, of an accused's defense. (*People* v. *Wren,* 140 Cal.App.2d 368, 370 [295 P.2d 54].) This is true both as to the kind of defense presented and the decision of when and whether to object to behaviour of the prosecution. As the Supreme Court held in *People* v. *Ibarra,* 60 Cal.2d 460, at pp. 464-465 [34 Cal.Rptr. 863, 386 P.2d 487], to justify relief on the ground of inadequate representation, " 'an extreme case must be disclosed,' " and it must appear that "counsel's lack of diligence or competence reduced the trial to a 'farce or a sham.' " The instant record makes no such disclosure.

The charge of "lack of control" by the court is totally unsubstantiated. The record is clear that appellant had a fair trial.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.

A petition for a rehearing was denied April 11, 1967, and appellant's petition for a hearing by the Supreme Court was denied May 10, 1967.