[Civ. No. 26469. Second Dist., Div. One. Feb. 21, 1963.]

TRUCK INSURANCE EXCHANGE, Plaintiff and Appellant, v. SAMUEL W. STILLEY et al., Defendants and Respondents.

[Civ. No. 26470. Second Dist., Div. One. Feb. 21, 1963.]

JAMES B. ANDERSON, Plaintiff and Appellant, v. TIME TRUCK LINES, Defendant and Respondent.

(Consolidated Cases.)

Early, Maslach, Foran & Williams, Victor E. Williams and Donald J. Pierr for Plaintiffs and Appellants.

Moss, Lyon & Dunn, Frank C. Christl and Henry F. Walker for Defendants and Respondents.

WOOD, P. J.—Three actions for damages, arising from a traffic accident involving three trucks, were consolidated for trial.

In the first action, Truck Insurance Exchange (the compensation insurance carrier for Kenworthy-Norton Trucking Company, the employer of James B. Anderson who is a driver involved herein) sued Walter J. Hanrahan (driver) and his employer Dave Martin Trucking Corporation, and Samuel W. Stilley (driver) and his employer Time Truck Lines (T.I.M.E. Incorporated).

In the second action, Walter J. Hanrahan and his employer Dave Martin Trucking Corporation sued James B. Anderson and his employer Kenworthy-Norton Trucking Company.

In the third action, James B. Anderson sued Stilley and his employer Time Truck Lines.

In the first action the verdict was in favor of defendants Dave Martin Trucking and Hanrahan, and was for the plaintiffs Truck Insurance Exchange and against Time Truck Lines and Stilley. The motion of defendants Time Truck Lines and Stilley for judgment notwithstanding the verdict was granted, and such judgment was entered.

In the second action the verdict was for the plaintiffs Hanrahan and Dave Martin Trucking and against defendants Anderson and Kenworthy-Norton.

In the third action the verdict was in favor of plaintiff Anderson and against Time Truck Lines and Stilley. The motion of Time Truck Lines and Stilley for judgment not-

withstanding the verdict was granted, and such judgment was entered.

Defendants Time Truck Lines and Stilley made a motion for a new trial in the first and third actions. Plaintiff Truck Insurance Exchange made a motion for a new trial in the first action. Defendant Anderson made a motion for a new trial in the second action. The motions for a new trial were granted, but it was provided that the order granting those motions should be effective only if the judgments notwithstanding the verdicts were reversed.

Plaintiff Truck Insurance Exchange appeals from the judgment notwithstanding the verdict in the first action (superior court, No. 711415).

Plaintiff Anderson appeals from the judgment notwithstanding the verdict in the third action superior court, No. 763982).

██ Those notices of appeal also state that the appeal is from the order granting judgment notwithstanding the verdict. Since such an order is not appealable (*Teich* v. *General Mills, Inc.*, 170 Cal.App.2d 791, 794 [339 P.2d 627]), the purported appeals therefrom will be dismissed.

██ The above mentioned notice of appeal by Truck Insurance Exchange also states that the appeal is from the order denying its motion to correct the verdict and judgment. Since no contention is made on appeal regarding this, it will be deemed that such purported appeal has been abandoned; and said appeal will be dismissed. (See *Hanson* v. *Hanson*, 178 Cal.App.2d 756, 757 [3 Cal.Rptr. 179].)

There is no appeal from the order granting a new trial.

The accident occurred on July 8, 1958, about 1 a.m., on or near a small bridge, over a dry wash, on Highway 60 in open desert area approximately 5 miles east of Desert Center and 43 miles west of Blythe. The two-lane paved highway, extending easterly and westerly, is 24 feet wide—with a single white line in the center and a 6-foot-wide shoulder on each side.

The bridge is 24 feet wide between the wheel rails (which rails were timbers, 10 inches by 12 inches by the length of the bridge, that are bolted onto the concrete surface of the bridge next to the wooden guardrail posts at each side of the bridge). The bridge is 58 feet long and at each side of it there is a white wooden guardrail (6 inches by 6 inches). At the approaches to the bridge (east and west ends) there are steel guardrails, approximately 94 feet long, which curve

from the outer edge of the 6-foot shoulders to the straight wooden guardrails at the sides of the bridge—thereby the steel guardrails diagonally cut off or across the 6-foot shoulders and funnel the traffic onto the bridge.

The bridge is a part of a slight curve (to the south) in the highway—in traveling westerly, the curve or turn is to the left, and in traveling easterly, the curve or turn is to the right.

Plaintiff Anderson, an employee of Kenworthy-Norton Trucking Company, was driving that company's truck and trailer westerly on the highway. He left Blythe about 10:30 or 11 p.m. and intended to arrive in Artesia (near Los Angeles) about 6 a.m. The flatbed truck and flatbed trailer were 60 feet long (total length), 8 feet wide, loaded with baled hay, and weighed (including the hay) 72,000 pounds. The hay was loaded so that there was an overhang of approximately 1 1-2 feet of hay at the rear of the trailer; but there was no overhang at the sides of the truck or trailer. Mr. Anderson had driven trucks and trailers in long distance hauling, for other employers during a period of approximately four years, and had been driving for Kenworthy-Norton about a year. He had driven on this highway on numerous occasions.

Plaintiff Hanrahan, an employee of plaintiff Dave Martin Trucking Corporation, was driving that company's truck tractor and two flatbed trailers easterly on the highway. He left Los Nietos (near Norwalk) about 7 p.m. and intended to arrive in Phoenix the next day (no specified time of day). The truck equipment was 60 feet long and was loaded with tile or clay sewer pipes and paper sacks of powdered fire clay. Each pipe was 5 feet long and 2 feet in diameter. The sacks of powdered clay were placed inside the pipes—the clay weighed about a ton. The total weight of the equipment and load was 76,000 pounds. Mr. Hanrahan had had 20 years' experience as a driver of heavy duty truck equipment. He had driven on this highway on many occasions.

Samuel Stilley, an employee of Time Truck Lines, was driving that company's truck tractor and van-type trailer westerly on the highway. He left Phoenix about 8:30 p.m. and intended to arrive in Desert Center about five hours later. The truck and trailer were 43 feet long, loaded with mixed or general freight, and weighed (including the freight) about 43,000 pounds. He had been a truck driver for Time Truck Lines 22 years and had driven on this highway on many occasions.

Mr. Anderson, the driver of the hay truck, testified: When he was 2 or 3 miles from the place of the accident he observed that lights, which were about a mile behind him were coming up faster than he was traveling. When he was about half a mile from the place of the accident the lights were "right up on my tail," and the driver kept indicating during that half mile that he wanted to go around or pass the hay truck. That indication was made by pulling out to the left into the other (eastbound) lane and then pulling back into the right (westbound) lane. He pulled out and back, in that manner, two or three times. The last time Anderson saw the lights of the other vehicle, the vehicle was "out in the other lane on a motion of coming around"—"the lights were in the other lane like he was coming on by"—and they (drivers) were getting right close to or approaching the guardrail of the bridge. Anderson had seen the lights of the oncoming Hanrahan truck (eastbound) when it was about ¼ mile west of the bridge, and at that time Anderson was about ¼ mile east of the bridge and was traveling about 40 miles an hour. When he (Anderson) was entering the bridge he could see the oncoming Hanrahan truck, and, in his mirror, he saw the other truck (Stilley or rear truck) in the other lane, and the driver was attempting to pull back in behind Anderson's truck. At that time he knew it was going to be close and, trying to prevent something, he was making a gear shift to pick up a gear or two to try to pull on and give the rear truck more time to pull in. When he made the shift, going into "fourth over," he had to reach and, in doing so, he looked in the righthand mirror and saw his clearance lights shining on the guardrail and that he had approximately a foot clearance. Also when he made the shift he saw the oncoming Hanrahan lights. He (Anderson) was then on the curve of the bridge—the curve to the left, and all of his truck equipment was to the right of the center line of the highway. When he shifted gears and saw that he had a clearance of one foot from the right guardrail, something happened to his steering wheel and it gave him a jarring motion, and as he tried to correct it he "got this big chattering [clattering] in the front"—it all happened in a fraction of a second. His steering wheel was not coming loose or breaking off or anything in that manner—it "just felt like it was being pushed to the left and trying to pull it back there." The clatter in the front of his truck was the collision between his truck and the Hanrahan truck. After the collision, Anderson's truck went across the

highway and against an embankment about 200 feet west of the bridge. The trailer, which was still attached to the truck, was on the highway. When he pulled himself loose from the interior of the cab, he noticed that his left foot was torn loose (almost amputated). He remained on the ground, about 10 feet from his truck, until he was taken in an ambulance to a hospital. His left foot was amputated, and the bones of his right foot had been injured. He was 23 years of age at the time of the accident.

On cross-examination, Mr. Anderson testified further: He entered the bridge "a little ahead of" Hanrahan, and at that time the clearance on the right side of his (Anderson's) truck was about 1½ feet, and the clearance on the left side (between the center line and his truck) was about 1½ feet. When he entered the bridge the Time truck (Stilley) was attempting to pass him. He could see the Hanrahan truck from the opposite direction and as he got farther onto the bridge he could see it was going to be close. As he shifted gears and looked in the righthand mirror, he saw his clearance lights (on the right) shining on the guardrail. He felt this tugging motion on his steering wheel, like he had been bumped behind, and in a fraction of a second the collision occurred in front, with the Hanrahan truck. When he made the shift he felt a tug on his steering wheel, and he had the thought that he was being pushed from behind at the rear corner, but he could not "feel" an exact point. The jar, which he felt, was on the truck itself, and he felt it against his back. The last time he saw the Hanrahan truck, before the collision, it was 20 or 30 feet away and on its side of the highway.

Mr. Hanrahan, the driver of the tile truck, testified: During the last half mile, as he approached the bridge (from the west), he was traveling between 40 and 45 miles an hour. When he was within 400 to 500 yards of the bridge, no vehicle was ahead of him going in the same direction he was going. He first observed the hay truck when he was ½ or ¾ of a mile west of the bridge, and at that time the hay truck was about the same distance east of the bridge, and another truck was behind the hay truck at a normal distance—possibly two truck lengths. The other truck stayed about the same distance behind the hay truck, and he did not see it attempt to pass, nor see it come in contact with, the hay truck. As he (Hanrahan) approached the bridge, the trailer of the hay truck seemed to swerve violently and the truck headed for the right

side of the highway and hit the guardrail at or beyond the bridge (east side). At that time Hanrahan was trying to see if he could get through, and he was trying to ride the right guardrail and to accelerate his speed. His truck was struck on its left front and its steering gear was broken, and he had no control of the truck. His truck and his front trailer continued in an easterly direction across the bridge and stopped on the right (south) shoulder of the highway. (His rear trailer became detached on the west approach to the bridge and went through the southwest approach guardrail.) When he got out of the cab, he noticed a choking dust, which was the (powdered) fire clay. Hanrahan's right thumb was injured or jammed back, and his legs, head, and back were sore, as a result of the collision.

Mr. Stilley, the driver of the general freight van-type truck (Time truck), testified: When he was 3 or 4 miles east of the bridge he first saw the hay truck ahead of him, and at that time there were vehicles between that truck and his truck. When he was about a mile from the place of the accident, he was approximately 200 yards behind the hay truck, no vehicle was between them, and he was traveling about 45 miles an hour. He closed the distance between them so that when he was 400 or 500 yards from the bridge, the hay truck was about 150 yards ahead of him, and no vehicle was between them. He did not form an opinion as to the speed of the hay truck. As he approached the hay truck, it was his intention to pass it if the road was clear. It is not true that on several occasions he went to the other side of the road to see whether the road was clear. When he was 300 or 400 yards east of the bridge, he saw the lights of the Hanrahan truck west of the bridge, but he could not estimate how far away the lights were. (In his deposition he said that he did not have a recollection of seeing the Hanrahan vehicle before there was an impact of any of the vehicles.) He did not observe the Hanrahan truck cross the center line at any time. After the hay truck was on the bridge or near the approach guardrail, he (Stilley) saw the back end of the trailer go to the right of the road and saw a streak of fire fly from the approach guardrail or the bridge guardrail. At that time Stilley was about 100 or 150 yards to the rear of the hay truck. When he saw the sparks, he applied the brakes and slowed down, but did not stop before arriving at the bridge. When "this thing happened on the bridge," dust enveloped everything and he could not see the lights of the

hay truck. Then his truck ran over something, which apparently was clay pipe that had fallen,—the truck lights went out, and he was in the dark. He stopped his truck near the west end of the bridge. Before he stopped, the left front tire of his truck blew out, causing his truck tractor to turn to the south (jackknifing across the eastbound lane). His truck never came in contact with the rear of the hay truck.

Mr. Leggett, called as a witness by plaintiffs Anderson and Truck Insurance Exchange, testified: On July 8, 1958, about midnight, he was driving a car carrier on Highway 60 bringing a load of cars from Phoenix to Los Angeles. When he was approximately 10 miles east of Desert Center and about 3 or 4 miles east of the place of the accident, the Time truck passed him, after it had previously made two unsuccessful attempts to pass. While it was making those attempts to pass, there were times when it was immediately to the rear of the witness' vehicle. When the Time truck passed him, he (witness) was traveling 45 miles an hour. That truck, after passing, increased its speed to approximately 60 miles an hour. When he (witness) was about 500 or 600 yards behind the Time truck, it moved out into the passing lane as if it were going to pass the truck in front of it. At that time he (witness) saw oncoming lights and the lights of the westerly-moving truck which was in front of the Time truck. When the Time truck moved out, starting a passing maneuver, he (witness) could see its light beams shining to the left, and it seemed that the truck went back to the right, and then all of a sudden there were several lights in all directions. He could not estimate the distance between the Time truck and the other truck ahead of it which was going in the same direction. He did not observe any contact between those trucks. Assuming that an accident had occurred, he stopped his truck about 75 yards from the bridge, and then walked to the bridge where there were three trucks that had been involved in the accident.

A highway patrol officer testified regarding the positions of the vehicles and the debris—clay pipes, fire clay, baled hay, broken guardrails, etc. Several photographs which he took at the scene were received in evidence.

The hay truck and trailer were about 200 feet west of the bridge—the front of the truck was about 54 feet south of the center line of the highway, and the rear of the trailer was about 3 feet south of that line.

The tile truck and its front trailer were a short distance east of the bridge—on the south shoulder of the highway. The rear trailer of that truck was just west of the bridge—it had gone through the southwest approach guardrail and was south of the highway, the rear end being 14 feet from the center line.

The Time truck tractor and trailer stopped in a jackknifed position near the west end of the bridge (on the bridge)—the front end of the tractor was 6 feet south of the center line of the highway, and the left side of the trailer was 4 feet north of that line.

According to the patrol officer's testimony, debris was strewn all over the highway—the area between the hay truck (west of the bridge) and the tile truck (east of the bridge) was strewn with pipe and hay. He did not observe any hay on the highway east of the bridge. Photograph (exhibit A-4) shows the jackknifed position of the Time truck and trailer, with the trailer in the westbound lane—and with broken clay pipe and other debris at the left side of, under, and at the back of, the trailer.

The north approach guardrail, from a point near the east end of it, was demolished, and the north bridge guardrail was demolished. The southwest approach guardrail was demolished; and the southeast approach guardrail was damaged.

Photographs (exhibits A-8 and 9) show, with respect to the Time truck, that the left end of the front bumper and the left front fender were bent back, that the left headlight was broken, and that the left front tire was flat.

Mr. Harper, called as a witness by defendants Stilley and Time, testified that he was a consulting physicist; that about 10 days before the trial, he started an investigation of the accident by looking at photographs which are now exhibits herein, and by making measurements of a truck similar to the Time truck, and by making measurements of a trailer similar to the hay trailer. In answer to a proper hypothetical question, he stated that in his opinion the Time truck did not come in contact with the hay trailer or the projecting hay on the rear of it, and that if there was any contact, it was such a minor or gentle one that it could not affect the stability or performance of the hay truck equipment.

It was stipulated: That the truck and trailer driven by Anderson were damaged in the amount of $9,550. That the truck and trailers driven by Hanrahan were damaged in the

amount of $13,871.69. That the truck tractor and trailer driven by Stilley were damaged in the amount of $600.08.

It was also stipulated that Truck Insurance Exchange had suffered damages for medical expenses (on behalf of Anderson, under its compensation insurance policy) in the amount of $5,096.70.

In the first action (Truck Insurance Exchange v. Hanrahan and his employer, and Stilley and his employer Time), the verdict upon the complaint was in favor of defendants Hanrahan and his employer; and was in favor of plaintiff Truck Insurance Exchange against Stilley and his employer Time for "damages in the sum $*None.*" Notwithstanding the part of this verdict in favor of plaintiff, judgment was entered in favor of defendants Stilley and Time.

In the second action (Hanrahan and his employer v. Anderson and his employer), the verdict was for the plaintiffs, as follows: $4,000 for Hanrahan, and $18,231.56 for his employer Dave Martin Trucking Corporation. Judgment was entered according to this verdict, and no appeal was taken from the judgment, but there was a conditional granting of a new trial herein in connection with the orders in the two other cases for judgment notwithstanding the verdicts.

In the third action (Anderson v. Stilley and his employer Time), the verdict was for plaintiff for $42,000. Notwithstanding this verdict for plaintiff, judgment was entered for defendants Stilley and Time.

■ "A motion for judgment notwithstanding the verdict should be granted only if it appears from the evidence and reasonable inferences therefrom, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict." (*Sparks* v. *Allen Northridge Market,* 176 Cal.App.2d 694, 699 [1 Cal.Rptr. 595].) ■ "The rules governing a motion for judgment notwithstanding the verdict are the same as those applicable to the determination of a motion for a judgment of nonsuit and for a directed verdict." (*Ibid.*) ■ In determining a motion for a judgment notwithstanding the verdict, the court must disregard conflicting evidence on behalf of the party against whom the verdict was rendered (the party making the motion), and must give to the evidence on behalf of the party in whose favor the verdict was rendered (the party opposing the motion) "all the value to which it is legally entitled, therein indulging in every legitimate inference which may be drawn from that evidence." (See *Reynolds* v. *Willson,* 51

Cal.2d 94, 99 [331 P.2d 48].) In the present case, the principal question presented is whether, disregarding all conflicting evidence on behalf of defendants Stilley and Time Truck Lines, and the other defendants, there was sufficient substantial evidence to support the verdicts, in favor of Truck Insurance Exchange and Anderson, on any tenable theory of liability. (Cf. *ibid.*)

Appellants' theory of the case is that the accident happened because defendant Stilley, the driver of the Time truck, in attempting to turn the truck back to the right side of the highway behind Anderson's trailer, caused the Time truck to come in contact with the left rear wheels of Anderson's trailer, thereby causing Anderson's trailer and truck (which were then on the bridge curve) to swerve out of control and into collision with the approaching Hanrahan truck.

Respondents (defendants Stilley and Time) argue to the effect that since there was no damage to the right front or side of their truck equipment, but damage only to the left front of it, and since there was no damage to the left rear of the Anderson trailer, the physical facts do not lend any support to appellants' theory. They argue further to the effect that appellants' theory is speculative—that Anderson said he saw the Time truck in a passing maneuver at the approach to the guardrail and he saw it attempting to pull in behind him; that there is no claim that he saw it again until after the accident; that he did not testify, nor did anyone testify, that the Time truck swerved so suddenly or sharply that its left front bumper and fender came in contact with the rear wheels of Anderson's trailer; that Anderson never claimed that the jarring or tugging motion which he felt was more than a little jar or tugging motion; and that a glance at the damage to the left front bumper and fender of the Time truck will reveal that the damage could not have resulted from such a jar or motion.

The evidence, viewed in the light favorable to appellants, shows: Anderson was driving westerly in a lawful manner in the right lane of the two-lane highway. When he was approaching the curved guardrails which funnel traffic onto the 24-foot-wide bridge, the defendant Stilley drove the 43-foot-long Time truck into the left lane in an attempt to pass Anderson's 60-foot-long truck on the curved 58-foot-long bridge. Mr. Leggett, who was driving a car carrier and was following the Time truck, saw the Time truck while it was in the left lane attempting to pass Anderson. Prior to arriving

at the bridge, Stilley had tried 2 or 3 times to pass Anderson. While Stilley was in the left lane trying to pass Anderson at the bridge, there was a clearance of approximately 1½ feet between the right side of Anderson's truck and the bridge guardrail, and there was a clearance of the same distance between the left side of Anderson's truck and the center line of the highway. While Anderson was on the bridge and prior to the collision, the Hanrahan truck, coming from the opposite direction, entered the bridge. When Hanrahan entered the bridge, Stilley was attempting to pass Anderson. Anderson saw Stilley attempting to pull back into the right lane behind Anderson's trailer. At that time Anderson shifted gears in an effort to go faster and give Stilley more time to pull in. Then Anderson felt a jarring or tugging motion on his steering wheel, which felt like the wheel was being pushed to the left, and felt like his truck had been bumped in the rear. The jar which he felt was on the truck itself and he felt it against his back. The rear tires on his trailer were "dual 10 x 20's" and extended flush with the extreme corners of the trailer bed. The hay was flush with the sides of the trailer. The trailer was lower than a regular trailer.

In view of the verdicts in favor of Anderson and Truck Insurance Exchange and against Stilley and Time Truck Lines, it is apparent that the jury inferred from the evidence that the Time truck, in returning to the right lane, came in contact with the Anderson truck. "Negligence may be established by circumstantial evidence, which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts. A plaintiff relying on circumstantial evidence does not have to exclude the possibility of every other reasonable inference possibly deriving from the evidence." (*Sparks* v. *Allen Northridge Market, supra,* 176 Cal.App.2d 694, 699 [1 Cal.Rptr. 595].)

The Time truck equipment consisted of a truck tractor to which was attached, by means of a pivot mechanism, a closed van-type trailer. In considering the physical facts, the jury apparently concluded that the comparatively short truck tractor, with such a connection with the van or load carrying part of the equipment could suddenly swerve sharply enough for its left front to come in contact with the rear tires of the Anderson trailer.

In *Kircher* v. *Atchison, T. & S. F. Ry. Co.,* 32 Cal.2d 176 [195 P.2d 427], the defendant contended that plaintiff's ver-

sion of the accident was contrary to the physical facts. The court, in upholding a judgment upon a verdict in favor of plaintiff, said (p. 184): " 'Common experience and observation teach us that strange and astonishing things sometimes happen in the world of physical phenomena, and accidents sometimes appear to happen in manner unaccountable.' In the light of all the circumstances of the present case it cannot be held as a matter of law, that plaintiff's version was such as to contravene the laws of nature, or as to render the jury's acceptance of it unreasonable."

In *Brown* v. *Guy,* 170 Cal.App.2d 256, 261 [338 P.2d 586], it was said: "Before an appellate court can reject as incredible testimony that has been believed by the trier of fact, such testimony must be 'wholly unacceptable to reasonable minds'. . . ."

In *Gallipo* v. *City of Long Beach,* 164 Cal.App.2d 70, 74 [330 P.2d 91], it was said: "When any testimony believed by the trier of the facts relates events which are not completely contrary to human experience or would seem physically impossible, the judgment cannot be reversed on appeal on the ground that such testimony is inherently unbelievable."

In the present case, it cannot be held as a matter of law that the Time truck, in returning to the right lane, did not come in contact with the Anderson trailer. The jury could reasonably find that the Time truck did come in contact with that trailer. There was substantial evidence to support the verdicts. The court erred in rendering the judgments notwithstanding the verdicts.

Respondents assert further that the pretrial statement, which was incorporated in the pretrial order, did not set forth a contention that the Time truck came in contact with Anderson's trailer. Upon motion of appellants, the pretrial statement was amended at the trial to include a contention that the Time truck was operated in such a manner as to cause injury to Anderson. The amendment was made properly.

The trial judge stated, in his memorandum opinion, that there was an inconsistency in the verdicts in that there was a verdict in favor of Hanrahan against Anderson in one case but there was a verdict in favor of Anderson in another case. In other words there was a verdict to the effect that Anderson's negligence caused injury to Hanrahan and his employer, and there was a verdict to the effect that Anderson (even though negligent as shown in the Hanrahan verdict) was entitled to recover against Time and Stilley. It does not appear

that the judge regarded such inconsistency as a basis for rendering judgments notwithstanding verdicts. It is probable that such reference thereto pertained to the order granting (conditionally) a new trial as to all the cases.

The appeals from orders granting judgments notwithstanding verdicts are dismissed. The appeal from the order denying motion to correct verdict and judgment is dismissed. The judgments notwithstanding verdicts are reversed.

Fourt, J., and Lillie, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 17, 1963.