[Crim. No. 4651. First Dist., Div. One. Sept. 30, 1965.]

THE PEOPLE, Plaintiff and Appellant, v. NORMAN
FONTAINE, Defendant and Respondent.

Stanley Mosk and Thomas C. Lynch, Attorneys General, Albert W. Harris, Jr., and John F. Kraetzer, Deputy Attorneys General, for Plaintiff and Appellant.

Robertson & Hand, Paul K. Robertson and Dent N. Hand, Jr., for Defendant and Respondent.

MOLINARI, J.—This is an appeal by the People from the trial court's order granting defendant's motion for a new trial and from its order denying the People's motion to vacate the order granting a new trial.[1]

## Statement of the Case

Following defendant's conviction for two counts of selling and furnishing marijuana (in violation of Health & Saf. Code, § 11531), defendant moved for a new trial on the grounds that (1) it was a violation of Penal Code section 653j[2] for the court to admit into evidence the tape recordings of conversations between defendant and the informant; (2) defendant was denied his right to a fair trial by the acts of the prosecuting authorities in preventing the availability of the informant; and (3) the trial court erred in failing to give to the jury that instruction authorized by Code of Civil Procedure section 2061, subdivisions 6 and 7. The matter was heard and submitted, and the court ordered a new trial, its memorandum decision indicating that it did so ''because it felt that the evidence disclosed that the defendant was denied a fair trial in the constitutional sense of being deprived of the right to be confronted with a material witness against him and his right to cross-examine such witness, and the facts in

[1]This latter motion was made by the People on the ground that they lacked adequate time to prepare their defense to defendant's motion for a new trial, and that therefore the trial court's order granting a new trial was issued ''by reason of . . . surprise or excusable neglect.'' This motion to vacate being in the nature, therefore, of a Code Civ. Proc., § 473, motion, the order denying it is an appealable order under Code Civ. Proc., § 963, subd. (2). (*Spellens* v. *Spellens,* 49 Cal.2d 210, 229 [317 P.2d 613]; *Bice* v. *Stevens,* 160 Cal.App.2d 222, 226 [325 P.2d 244]; *Fitzsimmons* v. *Jones,* 179 Cal.App.2d 5, 11 [3 Cal.Rptr. 373].)

[2]Unless otherwise indicated, all statutory references are to the Penal Code.

this case are in many respects similar to the case of *People* v. *Kiihoa,* 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673]."[3]

On this appeal the parties argue the propriety of the trial court's ruling not only on the basis of the ground upon which the motion was granted, but also on the other grounds urged in the motion. In view of the rule that an order granting a new trial must be affirmed if it can be sustained on any ground stated in the notice of intention to move for a new trial (*Lovett* v. *Dintzer,* 131 Cal.App.2d 165, 166 [280 P.2d 58] ; *Gainey* v. *Gainey,* 119 Cal.App.2d 564, 569 [259 P.2d 984]), we shall consider the merit of each of the grounds urged in the instant motion. Additionally, we are called upon to discuss the effect upon the instant case of *Griffin* v. *California,* 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106], decided subsequent to the trial of the present action. In *Griffin* it was held that "the Fifth Amendment, [to the United States Constitution] in its direct application to the Federal Government, and, in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." (P. 615; fn. omitted.)

Although the facts relevant to the discussion of the respective issues urged on appeal will be hereinafter set forth, we preliminarily note the following facts : The basis of the indictment against defendant consisted of two alleged sales of marijuana made by defendant to one Elsbeth Allen, whom the Santa Clara County narcotics officers had employed as an informant or "special agent." Immediately prior to each sale,[4] Miss Allen telephoned defendant's residence, requesting that he sell her some marijuana and arranging for a suitable meeting place. In both instances these telephone conversations, which were made from the Santa Clara County sheriff's office, were monitored and tape-recorded by the police. In each instance, following the telephone call, Miss Allen was searched by a matron, provided with $20 and driven to the meeting place, where she met defendant and subsequently delivered to the police a wax bag containing marijuana.

### The Rule of Kiihoa

In *Kiihoa,* the defendant was arrested for having made a sale of narcotics to a confidential informant. Following this

[3]The facts and holding in *Kiihoa* will hereinafter be discussed.

[4]The respective dates of these sales were June 25, 1963 and July 3, 1963.

initial arrest, which itself was not made until three months after the alleged sale, the police released the defendant. Approximately two months later the defendant was rearrested and eventually brought to trial and convicted for said sale. At the trial, a police officer who was called as a witness by the prosecution testified as to the reason for the defendant's initial release. He stated that it was "established policy" not to prosecute under circumstances where the informant had been intimidated and did not wish to be identified, but that once the police learned that the informant had left the state, the defendant was rearrested and brought to trial because the informant could then be identified without subjecting him to reprisals. The Supreme Court, in reversing the judgment of conviction, noted that California law requires that the prosecution divulge the name of an informer who is a material witness in the case (*People* v. *Durazo,* 52 Cal.2d 354, 356 [340 P.2d 594, 76 A.L.R.2d 257] ; *People* v. *Williams,* 51 Cal.2d 355, 359 [333 P.2d 19] ; *People* v. *McShann,* 50 Cal.2d 802, 808 [330 P.2d 33]), and concluded that, although this requirement had concededly been complied with, the tactics employed by the prosecution evidenced an intention on its part to avoid the very purpose of the disclosure rule and amounted to a denial of a fair trial "just as effectively as if the informer had never been identified." (P. 753.) The court noted further that although the record indicated that the police did not arrange for the informant's absence, its decision was not based on any active participation by the police in removing the informant from the jurisdiction, but was predicated upon the fact that "the circumstances surrounding this prosecution affected and militated against the defendant's right to a fair and impartial trial." (P. 753.)

The principle of the *Kiihoa* case was subsequently urged in several cases which came before the appellate courts of this state. In *People* v. *Givens,* 191 Cal.App.2d 834 [13 Cal.Rptr. 157], and *People* v. *McKoy,* 193 Cal.App.2d 104 [13 Cal.Rptr. 809], the *Kiihoa* rationale was held to be inapplicable under the facts since the record in each case did not in any way show that the prosecution delayed the defendant's arrest until the departure of the informant, such departure being, under the circumstances, a "fortuitous incident." (To the same effect see *People* v. *Sauceda,* 199 Cal.App.2d 47, 55-56 [18 Cal.Rptr. 452] ; *People* v. *Galvan,* 208 Cal.App.2d 443, 447-449 [25 Cal.Rptr.128].) In *People* v. *Castedy,* 194 Cal.App.2d 763 [15 Cal.Rptr. 413], the defendant's arrest was delayed for several months because the police " 'wanted to make more

cases' '' with the informant. (P. 768.) In holding that the unavailability of the informant at the trial caused by the delay did not deprive the defendant of a fair trial, the reviewing court balanced ''public interest and individual rights'' (p. 769), and concluded that under the facts of the case there was no indication that the prosecution had any intent to cause the absence of the informant ''but that the delay was for the mere purpose of more efficient law enforcement.'' (P. 770.)

Turning to the case at bench the record discloses the following facts and circumstances: The informant participated in both of the alleged sales; the testimonial evidence upon which defendant's conviction was based was given solely by law enforcement officers, who testified that they had little knowledge concerning the informant and that they did not know her whereabouts at that time; prior to the trial defense counsel asked the district attorney for the name of the informant and the district attorney told defense counsel that he had not yet looked over the case and did not know the informant's name; defense counsel did not then pursue the issue of the informant's identity, but learned her name from police officers several days before the trial; counsel for defendant at no time prior to trial asked the police or the district attorney as to the whereabouts of the informant; defendant's wife testified that she relied upon her husband's attorney to contact the informant until about a week before the trial, at which time she obtained some information from a friend concerning Miss Allen's whereabouts; defendant's wife discovered that Miss Allen was living in Vacaville, California, but could not be reached by telephone; and nothing further was done by defendant or his wife or defendant's attorney after it was ascertained that Miss Allen was living in Vacaville.

In addition to the foregoing, the record also discloses the following facts and circumstances relating to the issue before us: Defendant was not indicted until almost four months after the second alleged sale. The district attorney testified as to his office's reluctance to divulge the name of an informant because of the risks involved. In his affidavit submitted in support of the People's motion to vacate the court's order granting a new trial, Deputy Sheriff Shaver, who had participated in defendant's arrest, stated that he was aware of no ''established policy . . . to defer prosecutions until an informant leaves the area nor to procure the departure of informants from the area''; that the delay in prosecuting defendant in the instant case resulted from his endeavor to

utilize Miss Allen's "abilities and contacts" before he would have to reveal her identity; that her services had been so utilized during the months of July through October 1963; that he had in fact used her services on the day defendant was indicted in order to determine defendant's address; that several days after defendant's arrest, Miss Allen telephoned Shaver to tell him that she was planning to move away from the San Jose area; that in response to his inquiry as to where she was going, she "indicated somewhere in California, and said it would be 'better not to tell me,' inferring her personal safety might be endangered if I were to be informed"; that he at no time advised her to leave the area, nor had any reason to believe that she had left California.

There is no question that the informant in the instant case would have been a material witness. (See *People* v. *Castedy, supra,* 194 Cal.App.2d 763, 768 and cases there cited.) However, under the circumstances the trial court was not warranted in granting a new trial on the basis of the principle declared in *Kiihoa* because the facts of the present case do not parallel those of *Kiihoa.* Defendant does not contend, nor does the record support a finding, that the police refused to divulge the informant's name to defendant or his counsel. Insofar as the rule or rationale of *Kiihoa* is concerned, the record is devoid of any evidence indicating that the police maneuvered the trial to a time that would make the informant unavailable as a witness or that they encouraged the informant to disappear, or that the prosecution delayed defendant's arrest for the express purpose of avoiding the adduction of the informant's testimony. There is nothing in the record to show that the informant had departed from the jurisdiction of the state, or that she could not have been subpoenaed as a witness. Her identity and residence were known to defendant's counsel and wife, yet no attempt was made by them to secure the attendance of the informant except an attempt to reach her by telephone. Defendant made no effort to call the informant as a witness nor did he ask for a continuance to locate and produce her. (See *People* v. *Galvan, supra,* 208 Cal. App.2d 443, 447-449; *People* v. *Castedy, supra,* pp. 769-770.) Moreover, the purpose of the delay in defendant's arrest was not to prevent his learning the identity of the informant, but to preserve her anonymity in the interest of efficient law enforcement in order to utilize her "abilities and contacts" in the solution of other narcotic cases. Such conduct on the part of the police is, according to *Castedy* and *Galvan,* permissible police practice and does not, of itself, constitute a controlling

of the course of the proceedings by the prosecution which prevents the accused from presenting material evidence.

Reexamining the opening sentence of the trial court's memorandum opinion, we note that the court apparently ordered a new trial on two grounds: the applicability of the *Kiihoa* case *and* defendant's deprivation of his right to be confronted with a material witness and his right to cross-examine such witness. Although the Supreme Court in *Kiihoa* alluded to this second issue,[5] its decision to reverse the judgment was, as we have indicated, based on the prosecution's deliberate delay of the trial until the informant had left the jurisdiction. Cases both prior and subsequent to *Kiihoa* have, however, discussed the issue of whether the mere failure of the prosecution to call the informant as a witness constitutes a denial of the defendant's right to a fair trial. (See *People* v. *Alexander,* 168 Cal.App.2d 753 [336 P.2d 565]; *People* v. *McShann,* 177 Cal.App.2d 195 [2 Cal.Rptr. 71]; *People* v. *Render,* 181 Cal.App.2d 190 [5 Cal.Rptr. 236]; *People* v. *Castedy, supra,* pp. 769-770; *People* v. *Galvan, supra,* pp. 447-449.) The essence of the holding in these cases is that, in the absence of a showing that the prosecution connived to procure the absence of the informant, no more is required of the prosecution than to reveal the identity of the informant. ▪ As stated in *McShann,* "Disclosure, rather than discovery, is the burden placed upon the prosecution." (P. 198 of 177 Cal. App.2d.) ▪ It is well settled that neither side is required to produce all the witnesses who may have some knowledge of the facts; nor is the prosecution required to call the informant as part of its case or to produce him as a witness. (*People* v. *Castedy, supra,* p. 769; *People* v. *McShann, supra,* p. 198 of 177 Cal.App.2d; *People* v. *Kiihoa, supra,* p. 752.) All that is required is that all material evidence relating to the charge be presented in such a manner as to afford the defendant a fair trial. (*People* v. *Kiihoa, supra,* p. 752; *People* v. *Render, supra,* p. 195.) ▪ In the light of these principles

[5]Specifically, the court stated as follows: "'The right of an accused to be confronted with witnesses is the right to have witnesses who testify do so in the presence of and subject to cross-examination by the defendant. The prosecution is not required to call any particular witness, nor to put on all the evidence relating to a charge so long as all material evidence bearing thereon is fairly presented in such a manner as to accord to the defendant a fair trial. [Citations.] . . . The intentional suppression of material evidence by the state would, of course, be a denial of a fair trial and due process. This could, in some circumstances, be manifest by a failure of the prosecution to call certain witnesses. [Citations.]''' (P. 752.)

as applied to the facts of the instant case we conclude that the prosecution had no affirmative duty to produce Miss Allen at the trial.

## Section 653j

Defendant contends that the introduction into evidence of the tape recordings made by the police of the conversations between the informant and defendant constituted a violation of section 653j which forbids the use of devices for eavesdropping or recording a confidential communication.[6] ■ The facts relating to this contention are that prior to both of the alleged sales by defendant, the informant telephoned defendant from the sheriff's office and made arrangements with defendant to meet him and to purchase some narcotics. Both of these conversations were overheard and recorded by the police by means of an induction coil placed outside the receiver of the telephone, with a wire running from it to a tape recorder. No connection was made with the wiring of the receiver or of any other part of the telephone apparatus. During the trial, although defendant's counsel made various remarks on cross-examination insinuating that the police officers acted illegally in eavesdropping and recording these conversations between defendant and the informant, no objection was made by defense counsel when the tapes were introduced into evidence. The only objection by defense counsel in relation to this aspect of the case was made when the prosecution asked Shaver to relate the substance of the conversations between the informant and defendant which he had overheard. At this time, defense counsel objected on the ground that no proper foundation had been laid, stating at one point that ''The further question that I am going to bring up here is, of course, the illegality of . . . tapping the phones.'' It was then established by the prosecu-

---

[6]Section 653j in relevant part provides as follows:

''(a) Every person or his authorized agent not a party to the communication who, intentionally and without the consent of any party to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records a confidential communication, whether such communication is carried on among such parties in the presence of one another or by means of a telegraph, telephone or other device, except a radio, shall be punished by imprisonment in the county jail not exceeding one year, or by fine not exceeding one thousand dollars ($1,000), or by both such fine and imprisonment.

''. . . . . . . . . .

''(d) Except as proof in a suit or prosecution for violation of this section, no evidence obtained as a result of eavesdropping upon or recording a confidential communication in violation of this section shall be admissible in any judicial, administrative, legislative or other proceeding.''

tion that the informant had given the police permission to listen to the conversations, no further objections were made by defense counsel, and Shaver proceeded to relate the substance of the conversations which he had overheard.

In view of the well-established rule that the failure to make a proper objection in the trial court to evidence claimed to be inadmissible amounts to a waiver and precludes a defendant from raising such error as a ground on appeal (see Witkin, Cal. Criminal Procedure (1963) § 747, p. 721, and Witkin, Cal. Evidence (1958) § 699, et seq., p. 731, and cases there cited) we question the sufficiency of defendant's objection to the introduction into evidence of both the tape recordings and the testimony of the police with regard to the conversations between the informant and defendant. Assuming, however, that defendant did properly object to the introduction of this evidence so as to entitle him to raise these points as grounds for a new trial, we turn to a discussion of the merit of defendant's contention on this ground.

Before proceeding to discuss the applicability of section 653j it should be pointed out that the activities of the police in the instant case were clearly not in violation of the right of privacy protected by the Federal Communications Act[7] (47 U.S.C.A. § 605) or section 640 of the California Penal Code;[8] nor did they violate defendant's rights under the Fourth Amendment of the Constitution of the United States or under article I, section 19, of the California Constitution prohibiting unreasonable search and seizure. Section 605 of the Federal Communications Act has been held by federal courts and by the California Supreme Court as well to apply only to acts of the police in interfering with the conversation before it reaches its final destination. ▮ Where the conversation is recorded at the moment it reaches the intended receiver, there is no

---

[7]Section 605 of the Fed. Communications Act provides, in pertinent part, that "no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; . . ."

[8]Section 640, in pertinent part, provides as follows: "Every person who, by means of any machine, instrument, or contrivance, or in any other manner, wilfully and fraudulently, or clandestinely taps, or makes any unauthorized connection with any telegraph or telephone wire, line, cable, or instrument under the control of any telegraph or telephone company; or who wilfully and fraudulently, or clandestinely, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any telegraph or telephone wire, line, or cable, or is being sent from, or received at any place within this State; . . . is punishable [by fine or imprisonment or by both]. . . ."

interception within the meaning of this statute. (*Goldman* v. *United States,* 316 U.S. 129 [62 S.Ct. 993, 86 L.Ed. 1322]; *People* v. *Malotte,* 46 Cal.2d 59, 63-64 [292 P.2d 517], and cases cited therein.) Accordingly, it has been held that when the intended receiver consents to or directs the overhearing of the communication the moment it reaches him there is no violation of section 605, and that the overhearing of a telephone conversation by means of an induction coil with his consent does not violate section 605. (*People* v. *Malotte, supra,* pp. 63-64; *United States* v. *Williams,* 311 F.2d 721, 725; *Carbo* v. *United States,* 314 F.2d 718, 739; see also *Chavira Gonzales* v. *United States,* 314 F.2d 750.) Insofar as section 640 is concerned it has been held by the California courts that this section does not apply where one party to the conversation has given his consent to the overhearing or preservation of the conversation. (*People* v. *Malotte, supra,* p. 64; *People* v. *Ynostroza,* 214 Cal.App.2d 574, 576 [29 Cal.Rptr. 612]; *People* v. *Lawrence,* 149 Cal.App.2d 435, 442 [308 P.2d 821]; *People* v. *Cahan,* 141 Cal.App.2d 891, 901-902 [297 P.2d 715]; *People* v. *Channell,* 107 Cal.App.2d 192, 200 [236 P.2d 654].)

With regard to whether the use of an electronic device such as that used in the present case constitutes an unlawful physical invasion of a constitutionally protected right it has been held that the use of such a device does not violate the Fourth Amendment of the United States Constitution (*Lopez* v. *United States,* 373 U.S. 427, 438-439 [83 S.Ct. 1381, 10 L. Ed.2d 462]; *Rathbun* v. *United States,* 355 U.S. 107 [78 S.Ct. 161, 2 L.Ed.2d 134]; *On Lee* v. *United States,* 343 U.S. 747 [72 S.Ct. 967, 96 L.Ed. 1270]), or article I, section 19, of the California Constitution. (*People* v. *Malotte, supra,* p. 63.) The rationale of these cases is that since either party to a conversation may record and publish it there is no unreasonable invasion of privacy where one of the parties consents to or directs its overhearing or preservation.

Adverting to section 653j, we note that this section was enacted in 1963 and became effective on September 20, 1963. The recording of the two conversations which were used in the instant case took place in June and July of 1963. Section 3 provides "No part of it [the Penal Code] is retroactive, unless expressly so declared." ▮ It is a basic rule of statutory construction that every statute will be construed to operate prospectively unless a contrary legislative intention is clearly expressed. (*Helm* v. *Bollman,* 176 Cal.App.2d 838, 841 [1 Cal. Rptr. 723].) This rule is particularly applicable to penal statutes. (*People* v. *Daniels,* 222 Cal.App.2d 99, 101 [34 Cal.Rptr.

844].) The rationale underlying this rule is that laws which create new obligations, or impose new duties, or exact new penalties because of past transactions are generally considered to be repugnant to fundamental legal principles espoused by both the civil and common law. (See *Helm* v. *Bollman, supra,* p. 841.) ██ Accordingly, since section 653j does not specifically provide that its application is to be retroactive, the use in the instant case of the electronic device in question was not a violation of its provisions. Therefore, subdivision (d) of section 653j which provides that ''no evidence obtained as a result of eavesdropping upon or recording a confidential communication *in violation of this section* shall be admissible in any judicial . . . proceeding'' (italics added) is clearly inapplicable to evidence so obtained prior to the effective date of section 653j.

██ Assuming *arguendo* that section 653j is applicable in the instant case, it was not violated by the police because one of the parties to the recorded conversations consented to their recordation. We do not agree with defendant that the prohibition of this section extends to eavesdropping or recording without the consent of *all* parties to the conversation. It is defendant's position that the subdivision (a) phrase ''without the consent of any party'' means without the consent of all persons. As is pointed out in a comment in 52 California Law Review 142, the original draft of this legislation provided for the consent of ''all parties.'' Therefore, concludes the author of the article, ''The change to 'any party' must necessarily indicate that one party's consent will suffice.'' (P. 150, fn. 65.) Furthermore, in view of the fact that we find the words ''all'' and ''every'' used in other parts of this section, we must infer that the Legislature meant something other than ''all'' when it used the word ''any'' in subdivision (a) of section 653j; obviously it meant ''one,'' this being the most common meaning of the word ''any'' and the meaning which is appropriate in the particular context of this statute. (See Websters Third New Internat. Dict.)

Defendant claims that this construction of section 653j merely makes it reiterative of the law existing at the time of its enactment and, in particular, of the holding in *Malotte* that a defendant's privacy is not invaded where one of the parties to the conversation had consented to its overhearing and recording by the police. The thrust of defendant's argument is that section 653j would not have been enacted unless it was the legislative intent to require the consent of both parties

where a confidential communication is eavesdropped upon or recorded by means of any electronic device. We agree with defendant's contention that section 653j was an enactment of existing law in the sense that it codified the principles declared in *Malotte* and the federal cases hereinbefore alluded to dealing with the recording of a conversation after it has reached the recipient, but, for the reasons already pointed out, we do not agree that it was the legislative intent to require the consent of both parties to the recording of the conversation proscribed by section 653j.

Although section 640 appears to prohibit a person from ''wilfully and fraudulently, or clandestinely, or in any unauthorized manner . . . [reading or learning] the contents or meaning of any message, report, or communication while the same is . . . being sent from, or received at any place within this State,'' it has been held that section 640 is limited to the taking or making of an unauthorized connection with a telephone wire or instrument or to the obtaining of the contents of a telephone message *while* the same is in transit or passing over any telephone line, and that this section does not encompass the recording of the conversation *after* it has reached the intended recipient. (See *People* v. *Carella*, 191 Cal.App.2d 115, 137-138 [12 Cal.Rptr. 446]; *People* v. *Sica*, 112 Cal.App. 2d 574, 586 [247 P.2d 72].) It was, in our opinion, for the purpose of prohibiting this last-mentioned activity that the Legislature enacted section 653j.

Having concluded that since the police obtained the informant's consent to tape-record her conversations with defendant in the instant action they did not violate section 653j, we need not dwell upon the additional point discussed by defendant in relation to this section, namely, the applicability of section 653j to police officers, in view of the language of subdivision (h) of this section, which provides that ''Nothing in this section shall be construed as prohibiting law enforcement officers from doing that which they are otherwise authorized by law to do.''

### *Code of Civil Procedure Section 2061, Subdivisions 6 and 7*

 Although defendant failed to request instructions in the terms of subdivisions 6 and 7 of Code of Civil Procedure section 2061, he now urges that the trial court should have given such instructions *sua sponte*.[9] The basis for this con-

---

[9]Code Civ. Proc., § 2061 in pertinent part provides as follows: ''They [the jury] are, however, to be instructed by the court on all proper occasions: . . . 6. That evidence is to be estimated not only by its own

tention is that the recording of defendant's conversations and the testimony of the police who witnessed the alleged sales were ''weaker and less satisfactory'' evidence than the testimony of the informant would have been. It is well settled, however, that in the absence of a request by counsel the trial court is not required to give these instructions. (*People* v. *Reid,* 193 Cal. 491, 495 [225 P. 859] ; *Flynn* v. *Young,* 25 Cal. App.2d 614, 620 [78 P.2d 245] ; *People* v. *Adame,* 169 Cal. App.2d 587, 599-600 [337 P.2d 477].)

### Griffin v. California

 Defendant did not take the stand. The district attorney commented in his argument on defendant's failure to testify and the trial court instructed the jury regarding the legal effect of that failure to testify pursuant to the comment rule of this state prior to the decision of the United States Supreme Court in *Griffin* v. *California, supra,* 380 U.S. 609. Since *Griffin* holds that our comment rule violates the Fifth Amendment privilege against self-incrimination, the comment of the prosecutor and the trial court's instruction herein each constituted error. (*People* v. *Bostick,* 62 Cal.2d 820, 823 [44 Cal.Rptr. 649, 402 P.2d 529].) Such error does not, however, require a reversal unless it resulted in a miscarriage of justice under article VI, section 4½, of the California Constitution. (*People* v. *Bostick, supra,* pp. 823-827.) We have reviewed the record in this case which consists not only of the testimony with respect to the subject recordings but also that of several police officers who witnessed the two meetings between the informant and defendant. This testimony, when coupled with that of two sheriff's matrons who thoroughly searched the informant immediately prior to her meetings with defendant, and that of the police to the effect that they maintained a constant surveillance of the informant during her meetings with defendant and that the marijuana was turned over to them in each instance immediately after the informant contacted defendant, constitutes substantial evidence of defendant's guilt. Applying the prejudicial error test in the light of article VI, section 4½ to the instant case, we have concluded that in view of such substantial evidence establishing defendant's guilt a result more favorable to de-

---

intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict; and, therefore, 7. That if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust.''

fendant would not have been reached in the absence of the prosecutor's improper comment to the jury and the trial court's instruction as to the legal effect of defendant's failure to testify. (See *People* v. *Watson,* 46 Cal.2d 818, 834-838 [299 P.2d 243].)

*Summary*

In view of the foregoing the order granting a new trial must be reversed. Accordingly, the People's appeal from the order denying its motion to vacate the order granting a new trial has been rendered moot. It should be pointed out, moreover, that we would not, in any event, be called upon to decide the merits of the appeal from this order because by failing to make any contentions on appeal regarding this order the People must be deemed to have abandoned this purported appeal. (*Truck Ins. Exchange* v. *Stilley,* 213 Cal.App.2d 311, 314 [28 Cal.Rptr. 588]; *Hanson* v. *Hanson,* 178 Cal. App.2d 756, 757 [3 Cal.Rptr. 179]; *Clay* v. *Lagiss,* 143 Cal. App.2d 441, 452 [299 P.2d 1025].)

The appeal from the order denying the People's motion to vacate the order granting a new trial is dismissed. The order granting defendant's motion for a new trial is reversed.

Sullivan, P. J., and Sims, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 24, 1965.