[Crim. No. 5447.   First Dist., Div. Four.   Mar. 14, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES JOHNSON, Defendant and Appellant.

426

George A. Lydon, under appointment by the Court of Appeal, and Nason, Lydon & Michaels for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

DEVINE, P. J.—Appellant was convicted on two counts of violation of Health and Safety Code section 11501: the first, sale of heroin; and the second, offer to sell it.

Appeal from the second count may be disposed of quickly. A federal agent, Veal, who had been introduced to appellant by an informer, made a proposal to buy "half a piece" for $200; appellant replied that time was too short for that quantity, but he could get the same amount as "last time" (which is the episode referred to in the first count, described below) for $75, and accepted that amount and made a date for a rendezvous. The money, of course, had been listed. Appellant departed, but was seen on the street later by another agent, Durel, who had been following appellant with

indifferent success. Durel identified himself to appellant and showed his badge, whereupon appellant reached into his pocket, then threw an object into his mouth. Search revealed a $10 bill which was part of the funds given him by Veal. Appellant admitted meeting Veal, but denied the conversation and denied receiving money from him.

The conviction on the second count may be sustained without comment. Appellant contends that the asserted defects in the prosecution's case on appeal in the first count infect the second. But, as will appear, it is rather the reverse that is correct: the actions of appellant in the second count corroborate his conviction in the first.

As to the first count, appellant makes two points: (1) unconstitutional and illegal use of a radio transmitter, and (2) opportunity to have obtained the heroin from others than appellant was not ruled out by the evidence.

The People's principal witnesses were Caron B. Durel, a federal narcotics agent, and Robert H. Veal, an investigator with the United States Customs Service. Durel met, by prearrangement, an informer for the Bureau of Narcotics. Durel searched the informer and removed his money. No narcotics were found on him. Durel then placed a miniature radio transmitter on the informer's person and furnished him with $75 in recorded money. Durel searched the informer's car, looking for narcotics, and found none. The informer then drove the car, accompanied by Veal, to an apartment on Filbert Street, in San Francisco. Durel followed them in another car, carrying a receiver for the transmitter.

Veal testified that a girl answered the doorbell and asked him and the informer to come in. On entering the apartment he was introduced by the informer to the appellant and to a girl, Jada. The apartment was Jada's. The informer told them that Veal was "okay" and that they would probably see him in the future since he would be sending Veal money from Seattle to make buys for him. The informer inquired of appellant whether he was "going to be able to do any good" and appellant replied that he had made "some arrangements" the evening before. Then they left Veal's presence and went into a bedroom for a few minutes. Veal could hear them conversing in low tones, but could not tell what was said. As they were coming out, the informer handed appellant $75 and his car keys. Appellant then left the building, and Veal remained, talking to Jada and the informer. From the conversation, Veal learned that Jada was a narcotics addict.

Durel gave testimony as to matters which he heard over the transmitter, which corroborated the above testimony of Veal. In addition, Durel testified that he heard the informer say that he had only $75 and how much could appellant get for that, to which appellant replied, "A spoon and a half"; that he heard the counting of money—"fifty, sixty, seventy-five"; that he saw appellant appear on the street and get into the informer's car, which he drove to the Fillmore Street area. Durel lost sight of appellant and returned to the Filbert Street address to wait.

When appellant returned, Veal testified, appellant approached the informer, handed him a record album and his car keys. The informer looked at him and asked, "Did you score?", to which appellant replied with an affirmative nod. The informer and appellant then went into the bedroom. After a few minutes the informer came back into the living room and told Veal that his presence was making appellant nervous. Veal apologized and left the apartment.

Durel testified that at this point he heard over the transmitter the informer ask appellant, "You mean there's supposed to be a spoon and a half there?" Appellant replied that there was and asked for a part of it. There followed conversation and other sounds which indicated preparation for injections of heroin.

After he had been outside for about 15 minutes, Veal saw the informer come out of the building, get into his car, and drive down Van Ness Avenue. He and another agent overtook him, and the informer followed them to the Federal Building garage. Meanwhile, Durel followed, keeping him under surveillance. Durel testified that the informer appeared to be under the influence of narcotics when he came out of the apartment. When they had all arrived at the garage, the informer gave Durel a yellow balloon containing some powder, and Durel made another search of the car and of the informer. The balloon and its contents (identified as heroin) were admitted in evidence.

### The Fargo Transmitter

Appellant's first point in respect of the transmitter is that the use of the transmitter violated the Federal Communications Act, which makes it unlawful to intercept telephone or radio transmissions and divulge the existence, contents or purport thereof unless authorized by the sender (47 U.S.C. § 605.) But there was no interception, because the message

arrived at the destination intended by one of the conversing parties. (*People* v. *Fontaine*, 237 Cal.App.2d 320, 329-330 [46 Cal.Rptr. 855].)

■ His second point is that there was an illegal invasion of his privacy and a violation of the Fourth Amendment to the Constitution of the United States. ■ It has been held many times that the obtaining of evidence by transmitter and recorder is not in itself a violation of the Fourth Amendment. Among the cases so holding are: *On Lee* v. *United States* (1952) 343 U.S. 747 [96 L.Ed. 1270, 72 S.Ct. 967]; *Todisco* v. *United States* (9th Cir. 1961) 298 F.2d 208, cert. denied 368 U.S. 989 [7 L.Ed.2d 527, 82 S.Ct. 602]; cases collected in 97 A.L.R.2d 1302-1304.

■ There are cases in which particular uses of transmitters have been held violative of law. Trespass into the premises of the accused is such a case. (*Silverman* v. *United States*, 365 U.S. 505 [5 L.Ed.2d 734, 81 S.Ct. 679]; *Cullins* v. *Wainwright* (5th Cir. 1964) 328 F.2d 481, cert. denied 379 U.S. 845 [13 L.Ed.2d 50, 85 S.Ct. 33].) But, although appellant refers to Jada's apartment as a "protected area," there was no trespass in the case before us. The informer and the agent were readily received as invitees to the apartment. There was manifest immediately an interest by appellant to do business with his new "client," Veal. There is no trespass merely because an illegal transaction occurs indoors or because agents of the government do not divulge their true purpose. (*Lewis* v. *United States*, 385 U.S. 206 [17 L.Ed.2d 312, 87 S.Ct. 424]; *Lopez* v. *United States* (1963) 373 U.S. 427, 438 [10 L.Ed.2d 462, 83 S.Ct. 1381]; *People* v. *Wootan*, 195 Cal.App. 2d 481, 486 [15 Cal.Rptr. 833].)

■ But the point urged most strongly by appellant is that the conviction cannot stand because (1) the informer has not testified, and (2) there is no substantial evidence corroborating the recording.

The informer is the "chief accuser," says appellant, but he has been protected by use of the recording from scrutiny by the jury and from cross-examination. This procedure, says appellant, although sustained in the *On Lee* case, *supra*, 343 U.S. 747, has been criticized severely by several justices of the United States Supreme Court. The *On Lee* case was referred to in a concurring opinion in *Lopez* v. *United States*, *supra*, by Chief Justice Warren as having been "wrongly decided," and by Justice Brennan in his dissent (in which Justices Douglas and Goldberg concurred) as a "dead letter."

We do not recognize the validity of appellant's argument. In the first place, the *On Lee* case has not been set aside, but has been cited as authority subsequent to the *Lopez* case. (*Hunter* v. *United States* (9th Cir. 1964) 339 F.2d 425, 426; *United States* v. *Littwin* (6th Cir. 1964) 338 F.2d 141.) *On Lee* was not overruled by the majority in *Lopez*, despite the vigorous denunciations in the latter case. In the second place, the criticism made of *On Lee* in the concurring and dissenting opinions in *Lopez* is, essentially, that by substituting the recording for the informer's testimony, the prosecution deprives the defense of cross-examination which might impeach the informer, or shifts to the defense the onus of calling the informer, perhaps as a hostile and disreputable witness. In the *On Lee* case, the informer was a former employee. What he obtained in the transmitter conversation consisted in part of admissions by On Lee of a past offense, which led directly to conviction (see *Lopez* v. *United States, supra,* 373 U.S. at p. 443). The only direct evidence against On Lee was that of an alleged accomplice (*id.* at p. 442). Even if *On Lee* were a "dead letter," the present case, with its extremely limited use of monitoring, is very different. In the case before us, the informer presented only a voice, plus his known propensities, to defendant. The recorded conversation was very brief. Leading up to it, the testimony of Veal establishes the informer's vouching for Veal and the fact that the informer would send money to Veal to make "buys" for him. Veal testified that he saw $75 being passed from the informer to appellant. Later, he heard the informer ask appellant if he had scored and saw appellant nod affirmatively. Thus, the monitored conversation was confirmed on both sides by persuasive testimony. The circumstantial evidence is strong. It is corroborated by the evidence on the second count.

Convictions have been affirmed where evidence of the monitored conversation has been admitted although the informer did not testify, in *People* v. *Fontaine,* 237 Cal.App. 2d 320 [46 Cal.Rptr. 855] ; *People* v. *Brooks,* 234 Cal.App.2d 662, 676 [44 Cal.Rptr. 661] ; *People* v. *McShann,* 177 Cal.App. 2d 195 [2 Cal.Rptr. 71].

### *Opportunity for Informer to Have Procured the Heroin Elsewhere*

Appellant argues that the search of the informer was inadequate; wherefore, he may have had the balloon secreted

on his person. He argues also that the search of the automobile was incomplete, and finally, that the informer may have got the heroin from Jada, who was known to use narcotics. But a "strip search" is not essential. (*People* v. *Givens,* 191 Cal.App.2d 824, 838 [13 Cal.Rptr. 157].) The informer was under surveillance until he went into the room with appellant. He was under surveillance again until after appellant's nod that he had scored.

Regarding the search of the car, Agent Durel testified that he searched inside the glove compartment and under the front seat. Neither the back seat nor the rugs would come up. In view of the fact that Veal accompanied the informer in the car on the way over to the apartment and the fact that the agents kept him under surveillance during the relatively short drive back to the Federal Building, a more thorough search of the car seems quite unnecessary. Even if there had been any narcotics concealed in the trunk, under the hood, or in any other such place, the informer would have had no opportunity to retrieve them.

In large part, the case was a test of credibility of witnesses. Veal testified that he saw the informer hand the $75 to appellant; appellant denied receiving it. Durel testified that appellant, just before his arrest, threw an object into his mouth; appellant denied this. The listed $10 bill was in appellant's possession; appellant denied that he had received it from the agent. Appellant's credibility unquestionably was enfeebled by his prior felony conviction (sale of heroin).

The jury was amply instructed on the "only reasonable hypothesis" requirement which applies in circumstantial evidence cases.

Judgment affirmed.

Rattigan, J., and Christian, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 10, 1967. Peters, J., was of the opinion that the petition should be granted.