[Crim. No. 14992.    Second Dist., Div. One.    Dec. 9, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. PAUL PLEASANT, Defendant and Appellant.

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lola M. McAlpin, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of robbery in the second degree.

In an information filed in Los Angeles on October 13, 1967, defendant was charged with having robbed Ruth and Charles Shechtman of certain personal property on August 1, 1967, and it was further charged that at the time of the commission of the offense said defendant was armed with a deadly weapon, namely, a knife. Defendant pleaded not guilty. The cause was submitted upon the transcript of the proceedings had at the preliminary hearing and the testimony of defendant and a Mrs. White, the woman with whom defendant was living at the time of the offense. The judge found defendant guilty of second degree robbery rather than first degree robbery as charged and made no finding as to whether defendant was armed at the time of the commission of the offense although the evidence was uncontradicted that defendant did use a knife in the robbery. Defendant was sentenced to the state prison. A timely notice of appeal was filed.

A résumé of some of the facts is as follows: on August 1, 1967, Charles Shechtman and his wife were making collec-

tions for moneys due and payable from various establishments. Charles, up until the time in question, had collected about $2,000 represented by several checks. Mrs. Shechtman had the checks with her at such times as Mr. Shechtman would be out of the car. The Shechtman car was parked and he got into the driver's seat. As he did so defendant got into the car on the passenger side next to Mrs. Shechtman and another person squeezed into the driver's side next to Mr. Shechtman. Defendant had a knife in his hand and held the same close to and on Mrs. Shechtman. The person with defendant had a bag in his hand which contained a hard object. That person started the Shechtman car and moved it a short distance. Defendant struggled with Mrs. Shechtman and cut her with the knife. She screamed, defendant grabbed her purse (which contained the checks) and he and his fellow robber fled down an alley. Shechtman reported the incident to the police and gave the police a description of defendant. Both robbers were Negroes, each wore a white shirt over a pair of dark pants, had a turban around his head and wore a goatee beard. Mrs. Shechtman also described defendant to the police.

Defendant sometime after the robbery went to the apartment of a Miss Shawler and there gave the checks to Arthur Fite. Fite gave the checks to Miss Shawler who thereafter deposited the checks in her bank account. A few days later defendant talked to Miss Shawler over the telephone, asked to talk to Fite and stated that he knew that Fite had given the checks to her. She told defendant that the matter was to be strictly between Fite and him. She was arrested on September 8, 1967, in connection with the checks. She was asked whether the signature on the checks was hers and she told conflicting stories about the checks and what had happened to the money received therefrom. She finally, on her own account, decided it would be preferable to tell the truth after she had talked with Fite while she was in custody.

Officer Mockett, of the Los Angeles Police Department, tape recorded a conversation between Miss Shawler and Fite wherein Fite told Miss Shawler to keep her voice down, that the checks were "two-party checks" and "they can't pin a thing on you" and further "all the cops want are the robbers, they don't want us, the people who have the checks." Fite asked the officers if they wanted the persons who committed the robbery, "the guy that really pulled it" and the officers responded affirmatively and Fite said, "All right. I'll

set him up for you. . . . I know him by the name of Paul, I know his phone number. He is the one that committed the robbery.'' The officer asked Fite how he knew who had committed the robbery and Fite replied:

"Well, a man came up to me and wanted me to cash those checks that you have shown me. I told him that I would take it to Joyce, that Joyce would cash them. . . . Paul told me that he had knocked over an old couple—an old white couple —they were bill collectors on Towne Avenue and that he cleaned them out and the checks were part of the loot.''

Fite telephoned defendant and told defendant to meet him at a designated service station. At the service station Fite said to the police: ''. . . The 'deuce' is sitting there with the mustache, that's all, that's the one who committed the robbery.'' When shown the crime report and the description of the suspect Fite stated that the person described was defendant.

Officer Mockett arranged for a lineup on September 11, 1967, and Mr. and Mrs. Shechtman were present. Defendant was advised prior to the lineup that such was to be conducted, that he had a right to have an attorney present and that if he could not afford to engage an attorney the public defender would be present and would represent him. Defendant stated that he did not want an attorney. Five male Negroes participated in the lineup and each of the Shechtmans identified defendant as one of the robbers in question. Prior to the lineup Mrs. Shechtman had looked at two pictures and had told a detective that the pictures resembled the men who committed the robbery, however, that they were not the robbers. The record does not disclose who the two pictures depicted.

During the preliminary hearing Fite was called as a prosecution witness. Fite gave his name, address, telephone number and business. He was then asked to look through the checks and state whether he had ever seen them before. Fite answered ''I stand on the Fifth Amendment and refuse to answer that question, sir.'' No further questions were put to the witness, there was no objecton to the question, and the witness was excused.

Appellant now contends that the arrest was in violation of his Fourth Amendment rights under the Constitution of the United States, that he was forced into a lineup without having waived his right to counsel and that the prosecutor called Fite, an accomplice, to the witness stand in violation of appellant's Fifth Amendment rights under the Constitution

of the United States. We have concluded that there is no merit in appellant's assertions.

Appellant argues that he was arrested upon the information of Fite who was an unreliable informant. There was ample probable cause to arrest appellant. The victims of the robbery almost immediately after the offense gave a recital of what had occurred and a description of appellant and the man with him. A police report was made including a description of appellant. Thereafter the officers arrested two other persons who were suspected of participating in the spoils of the robbery. The officers in short had a report of a robbery and a description at least of one of the robbers. This, added to the facts which Fite related plus the tape recording of the conversation between Fite and Miss Shawler gave the police ample cause to arrest appellant when they located him. (See *People* v. *Johnson,* 249 Cal.App.2d 425, 429 [57 Cal.Rptr. 480]; *People* v. *Wright,* 216 Cal.App.2d 866, 871 [31 Cal. Rptr. 432]; *People* v. *Williams,* 169 Cal.App.2d 400 [337 P.2d 134]; *People* v. *Lewis,* 240 Cal.App.2d 546, 551 [49 Cal.Rptr. 579].)

The lineup was properly conducted. The victims identified appellant in the lineup solely from their observation of appellant during the course of the robbery. True it is that appellant claims he was not told of his rights but the judge believed the officer and disbelieved appellant. It is stated in *People* v. *Valencia,* 249 Cal.App.2d 370, 377 [57 Cal.Rptr. 567]: "It is clear that the question of whether or not there has been a waiver is primarily a question for the trial judge and his determination thereon should not be disturbed by a reviewing court unless it is palpably erroneous." (See also *People* v. *Escobedo,* 250 Cal.App.2d 417, 428-429 [58 Cal.Rptr. 426]; *People* v. *Wood,* 250 Cal.App.2d 911, 912 [59 Cal.Rptr. 317].)

Finally, appellant complains that his rights were violated by the prosecutor's calling Fite to testify. No one other than Fite made an objection at the time of trial. In *People* v. *Diaz,* 66 Cal.2d 801, 805 [58 Cal.Rptr. 729, 427 P.2d 505] it is stated: ". . . In the absence of an objection, which would have given the court an opportunity to admonish the jury to disregard the statement, a claim of misconduct furnishes no ground for reversal."

Appellant seems to place reliance in *New York* v. *Pollock,* 21 N.Y.2d 206 [234 N.E.2d 223]. The facts of that case however are in nowise similar to the facts of this case. In *Pollock* the prosecution called the witness in question to testify, know-

ing that the witness was a participant in the murder under consideration and knowing that the witness would claim the privilege and not testify. A proper objection was timely made. The jury was instructed to disregard anything said by the witness. In the case at bench there was no jury, there was no objection to the witness or to anything he said, there was no thought that the prosecution was attempting to corroborate some dubious testimony or improperly to bolster up a confession. This was not the case where the prosecutor blatantly asked question after question—indirectly hammering home something he could not get into evidence properly and thereby unfairly prejudicing appellant.

In this case appellant was identified by each of the victims at the lineup—he was identified in court by each of the victims. In *People* v. *Lewis*, 240 Cal.App.2d 546, 548 [49 Cal. Rptr. 579] the rule is stated that: ''The strength or weight of identification testimony is for the jury, or for the trial court in a nonjury trial. . . . 'The identity of a defendant may be established by proof of any peculiarities of size, appearance, similarity of voice, features, or clothing.' . . . Lack of positiveness in identification does not destroy the value of the identification but goes only to its weight. . . .''

The appellant in this case was properly and fairly convicted. He was indeed fortunate in that the judge saw fit to find the robbery to be in the second degree and in that he failed to find whether appellant was armed at the time of the robbery.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 5, 1969.